[Nos. 57004-3, 57418-9, 57149-0,   En Banc.   November 7, 1991.]
57511-8, 57950-4.

THE CITY OF YAKIMA, *Appellant*, v. INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO, LOCAL 469, YAKIMA FIRE FIGHTERS ASSOCIATION, ET AL, *Respondents*.

THE CITY OF YAKIMA, *Appellant*, v. INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO, *Defendant*, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO, LOCAL 469, YAKIMA FIRE FIGHTERS ASSO-CIATION, *Respondent*.

THE CITY OF YAKIMA, *Petitioner*, v. PUBLIC EMPLOYMENT RELATIONS COMMISSION, *Respondent*.

656

*Anthony F. Menke, Rocky L. Jackson*, and *Menke & Jackson*, for City of Yakima.

*Webster, Mrak & Blumberg* and *James H. Webster*, for respondent International Association of Fire Fighters.

*Kenneth O. Eikenberry, Attorney General*, and *Richard A. Heath, Senior Assistant*, for respondent Public Employment Relations Commission.

*Aitchison & Hoag* and *Christopher K. Vick*, for respondent Yakima Police Patrolmans Association.

*Frederick D. Gentry* on behalf of Washington State Association of Fire Chiefs, amicus curiae for City of Yakima.

*C. Danny Clem, Prosecuting Attorney for Kitsap County*, and *Karin L. Nyrop, Deputy*, amicus curiae for City of Yakima.

*Ron Meyers* on behalf of Washington State Council of Fire Fighters, amicus curiae.

*Richard L. Andrews, Bellevue City Attorney*, and *Lori Molander* and *David E. Kahn, Assistants*, amicus curiae.

ANDERSEN, J. —
### FACTS OF CASE
The principal question raised by these five consolidated appeals is whether the City of Yakima must collectively bargain with its police officers and fire fighters with respect to matters which the City has delegated to its Civil

Service Commission. As the Civil Service Commission is presently constituted, we hold that it must.

State statutes generally require that city employers collectively bargain with their employees with respect to personnel matters, including wages, hours and conditions of employment.[1] Exceptions to this general rule are specifically set forth in the Public Employees' Collective Bargaining Act (the Act), RCW 41.56.[2]

Each of the consolidated cases before us[3] involves interpretation of the proviso contained in that section of the Act which establishes the duty of public employers to participate in collective bargaining. The Act, in RCW 41.56.100, exempts employers from bargaining

> any matter which . . . has been delegated to any civil service commission or personnel board similar in scope, structure and authority to the [state personnel] board . . .

The City claims that this proviso exempts from bargaining all matters delegated to *any* civil service commission as well as all matters delegated to a local personnel board which is similar in scope, structure and authority to the state personnel board. The City argues that a ruling contrary to its position would undermine and disable all civil service commissions throughout this state.

The police officers' and fire fighters' unions, on the other hand, contend the proviso exempts from collective bargaining only those matters delegated to a civil service commission which is similar in scope, structure and authority to the state personnel board or to a local personnel board

---

[1]*See* RCW 41.56.100; RCW 41.56.030(4).

[2]RCW 41.56.020.

[3]Three of the appeals were filed by the International Association of Fire Fighters, AFL-CIO, Local 469 (Fire Fighters), at various stages of the same superior court case. The other two appeals were filed by the City of Yakima. In one, the City appeals the dismissal of a superior court action which sought resolution of an unfair labor practice dispute already pending before the Public Employment Relations Commission (PERC). The other is the City's appeal of PERC's decision in that unfair labor practice case.

which meets the same requirement. The unions contend that a ruling contrary to their position would render the collective bargaining act meaningless.

The parties also disagree as to which forum — the superior court or the Public Employment Relations Commission (PERC) — had jurisdiction to initially determine the ultimate issue involved in this case. The unions petitioned PERC for a resolution of the problem. The City attempted to have the court decide the dispute. This dispute over forum resulted in the following complex procedural history.

On January 18, 1989, the Yakima Civil Service Commission for Police and Fire (hereafter Civil Service Commission) amended its civil service rules. The amendments included changes in the rules governing promotion, discipline and grievances, areas which generally would be considered mandatory subjects of collective bargaining.[4] At that time the International Association of Fire Fighters, AFL-CIO, Local 469 (Fire Fighters) had a collective bargaining agreement with the City of Yakima which was effective from January 1, 1988, through December 31, 1989. A collective bargaining agreement between the City and the Yakima Police Patrolmans Association (Police Officers) was effective from January 1, 1987, to December 31, 1988.

On February 3, 1989, the Fire Fighters filed an unfair labor practice complaint with PERC alleging the City of Yakima had committed an unfair labor practice by failing to collectively bargain the changes in the civil service rules before unilaterally implementing those changes.

On April 19, 1989, the Police Officers filed a similar unfair labor practice complaint with PERC, alleging the City had failed to bargain the changes with the Police Officers' union.

On August 22, 1989, the City filed a declaratory judgment action against the Fire Fighters and PERC in

---

[4]*See, e.g.*, RCW 41.56.030(4); *International Ass'n of Fire Fighters, Local 1890 v. Wenatchee*, Pub. Empl. Relations Comm'n Dec. 2216 PECB (1985).

Yakima County Superior Court. The City asked the court to declare that the City of Yakima had no duty to collectively bargain any matter "relating to hiring, promotions, transfers, reinstatements, demotions, suspensions and discharges" and any other matter delegated to the Civil Service Commission. (City's Complaint for Declaratory Judgment and for Stay of Administrative Proceedings, filed August 22, 1989; Clerk's Papers, at 424 (1989 action)).

The City also asked the court to declare that it had not committed an unfair labor practice.

Two days later, on August 24, 1989, the City filed a declaratory judgment action against the Police Officers and PERC asking for substantially the same relief with respect to the Police Officers and their unfair labor practice complaint.

The superior court cases were consolidated and, on October 27, 1989, the court orally granted PERC's and the unions' motion to dismiss the actions. The trial court ruled that dismissal was required under the priority of action rule and because the City had failed to exhaust administrative remedies available to it through PERC.

The written order of dismissal was entered December 15, 1989, and the City's motion for reconsideration was denied February 14, 1990. The City then petitioned for direct review and we agreed to hear the appeal.

In the meantime, the Fire Fighters' 1988-89 collective bargaining agreement had expired. The Fire Fighters' union and the City began negotiations and on February 6, 1990, the City refused to bargain with respect to any matters that had been delegated to the Civil Service Commission.

On February 15, 1990 (the day after the trial court had denied the City's motion for reconsideration in the 1989 declaratory judgment actions), the City filed another declaratory judgment action against the Fire Fighters. Like the first action, the second declaratory judgment action asked the court to determine that the City had no duty to collectively bargain with the Fire Fighters with

respect to leave time, discipline and discharge, promotions, job safety, grievance procedures, or "any other matters connected with the general subject of personnel administration, which have been delegated to the City of Yakima Civil Service Commission for Police and Fire Employees". (City's Complaint for Declaratory Judgment, filed February 15, 1990; Clerk's Papers, at 363 (1990 action)).

On February 21, 1990, the Fire Fighters amended their unfair labor practice complaint, filed with PERC, to include an allegation that the City continued to refuse to collectively bargain with respect to discipline, promotions and other working conditions during the new contract negotiations.

Although a hearing on the unions' unfair labor practice complaints was held on March 14, 1990, a decision was not issued by the PERC hearing examiner until June 12, 1990.

The Fire Fighters meanwhile had moved to dismiss the City's second declaratory judgment action on the grounds that the City had failed to exhaust its administrative remedies and that under the priority of action rule, PERC should be permitted to complete its determination of the issue in controversy. The trial court denied the motion to dismiss, finding that the City's two lawsuits against the Fire Fighters were different, in that the 1989 lawsuit involved a refusal to bargain with respect to an *existing* contract and the 1990 lawsuit involved a refusal to bargain the same subjects, for the same reason, but with respect to a *prospective* contract. The Fire Fighters filed a motion for discretionary review of that decision in this court. Because of the superior court ruling on that issue, PERC declined to rule on the Fire Fighters' amended unfair labor practice complaint.

The City moved for summary judgment in the superior court action and the court orally granted the City's motion on May 25, 1990. The court ruled that based on the language, the purpose and the history of the civil service and the collective bargaining statutes, the proviso contained in

the collective bargaining act was intended to exclude from bargaining all matters delegated to any civil service commission.

Approximately 2 weeks later, on June 12, 1990, PERC issued its written decision which found the City guilty of unfair labor practices. The PERC hearing examiner ruled that the proviso set forth in the Public Employees' Collective Bargaining Act did not apply to every civil service commission, but only to those which were similar in scope, structure and authority to the state personnel board. The hearing examiner's decision was appealed by the City and after the Commission affirmed the examiner's interpretation of the proviso, the City asked for judicial review. The Superior Court authorized direct review in the Court of Appeals and the Court of Appeals certified the case to this court. We accepted review.

A written order granting summary judgment in the declaratory judgment action was entered June 22, 1990. The Fire Fighters appealed that order to this court, requesting direct review. Based on PERC's decision, the Fire Fighters then asked the Superior Court to reconsider its summary judgment. When the trial court denied the Fire Fighters' motion for reconsideration on August 3, 1990, the Fire Fighters filed another notice of appeal asking for direct review of the denial of their motion for reconsideration.

We consolidated all five appeals and permitted amicus curiae briefs to be filed by the Washington State Council of Fire Fighters, the Washington State Association of Fire Chiefs, Inc., the City of Bellevue, and the Washington Association of Prosecuting Attorneys.

We consider two issues to be determinative.

## ISSUES

ISSUE ONE. Does the proviso of RCW 41.56.100, which exempts cities from collectively bargaining matters which have been delegated to "any civil service commission or personnel board similar in scope, structure and authority"

to the state personnel board, require a civil service commission to be similar in scope, structure and authority to the state board before the exemption applies?

ISSUE TWO. Where a controversy between a public employer and a union has been submitted to the Public Employment Relations Commission, and where the primary issue to be resolved is a legal one requiring construction of the Public Employees' Collective Bargaining Act, may a superior court properly decide the controversy pursuant to the declaratory judgment act before PERC has had an opportunity to resolve the controversy?

## DECISION

ISSUE ONE.

CONCLUSION. The proviso of RCW 41.56.100, which exempts cities from collectively bargaining matters which have been delegated to "any civil service commission or personnel board similar in scope, structure and authority" to the state personnel board, requires a civil service commission to be similar in scope, structure and authority to the state board before the exemption applies.

This appeal requires us to resolve a conflict between policies favoring both collective bargaining and local civil service systems.

Civil service systems began in 1883 with the passage of the federal civil service act.[5] The fundamental purpose of civil service laws is to require public officials to hire, promote and discharge employees based on merit rather than political affiliation, religion, favoritism or race. In essence, the civil service system was designed to replace the spoils system with a merit system.[6]

Washington's civil service statute for city police officers, RCW 41.12, was enacted in 1937

> to establish a civil service system to (1) provide for promotion on the basis of merit, (2) give police officers tenure, and

---

[5]Pendleton Act, ch. 27, 22 Stat. 403 (1883).

[6]15A Am. Jur. 2d *Civil Service* § 1, at 5 (1976).

(3) provide for a civil service commission to administer the system and to investigate, by public hearing, removals, suspensions, demotions, and discharges by the appointing power to determine whether such action was or was not made for political or religious reasons and whether it was or was not made in good faith for cause.

*Reynolds v. Kirkland Police Comm'n*, 62 Wn.2d 720, 725, 384 P.2d 819 (1963).

Washington's civil service statute for fire fighters, RCW 41.08, was enacted 2 years earlier, in 1935, and is nearly identical to the civil service statute for police officers, RCW 41.12. Like the statute governing civil service for police, the purpose of the fire fighters' civil service statute is "to establish an orderly system of personnel administration and management and to provide tenure and a merit system of appointment and promotion." *Bellingham Firefighters, Local 106 v. Bellingham*, 15 Wn. App. 662, 665, 551 P.2d 142 (1976).

Thus the reason for civil service systems governing police and fire department employees is to protect those employees from the arbitrary or discriminatory actions of their employers in hiring, promotions, discipline and discharge and to ensure that the public is protected by qualified police and fire personnel.

The City of Yakima established its Civil Service Commission for police and fire in the mid-1930's.[7] The Civil Service Commission was delegated the authority to govern all employment, advancement, demotion, discharge and discipline for fire and police department personnel. The Commission was granted authority by the ordinances to make any rules which substantially accomplish the purpose of the state civil service statutes governing police officer and fire fighter merit systems.

Those statutes, RCW 41.08 and RCW 41.12, give civil service commissions the power

(1) To make suitable rules and regulations not inconsistent with the provisions of this chapter. Such rules and regula-

---

[7]Yakima County Code ch. 1.46 (fire); ch. 1.54 (police).

tions shall provide in detail the manner in which examinations may be held, and appointments, promotions, transfers, reinstatements, demotions, suspensions and discharges shall be made, and may also provide for any other matters connected with the general subject of personnel administration, and which may be considered desirable to further carry out the general purposes of this chapter, or which may be found to be in the interest of good personnel administration. Such rules and regulations may be changed from time to time.

RCW 41.08.040(1) (part).[8]

The development of the civil service systems paralleled the growth of collective bargaining in the private sector of the labor force. When civil service laws were first being enacted, public employees supported strengthening the civil service systems as a means of protecting their employment status.[9] It was not until the mid-1960's that public employees began to view civil service systems as an extension of management. That view led to an increasing demand for collective bargaining on issues traditionally left to local civil service commissions.[10]

In 1965 our State Legislature responded to the demand for public employee bargaining rights by passing Senate Bill 360, which was intended to establish and define collective bargaining rights for public employees. The bill was vetoed by then Governor Daniel J. Evans because the bill, as drafted, permitted a conflict between civil service systems and collective bargaining. Governor Evans' veto message stated in part:

> This bill purports to grant to employees of the state and certain political subdivisions the right to bargain collectively with their employers through labor organizations. I am satisfied that this statute is not necessary to confer this right upon public employees, and that, as written, the bill would contravene the merit systems now established at many levels of government.
>
> . . .
>
> Under state merit system rules, collective bargaining agreements are subject to certain limitations. . . . Merit

---

[8]*See also* RCW 41.12.040(1).

[9]H. Edwards, R. Clark & C. Craver, *Labor Relations Law in the Public Sector* 369 (3d ed. 1985).

[10]H. Edwards, R. Clark & C. Craver, at 369.

system laws and rules often provide methods for resolving disputes through personnel boards or civil service commissions. Without the limitations contained in the laws of other states, Senate Bill No. 360 would undermine these procedures and ultimately the entire civil service system.

. . .

For the foregoing reasons I have vetoed Senate Bill No. 360; but I have not done away with the right of public employees to collectively bargain. This right still exists, but without Senate Bill No. 360 the people will be assured that collective bargaining agreements will continue to be subject to merit systems wherever they exist, . . ..

Senate Journal, 39th Legislature (1965), at 1127-28.

Two years later, in 1967, the Legislature passed, and Governor Evans signed into law, Engrossed House Bill 483, enacting the Public Employees' Collective Bargaining Act,[11] now codified as RCW 41.56. In addition to clarifying the right of public employees and employers to collectively bargain, the bill also amended the State Civil Service Law, RCW 41.06, to clarify the rights of state employees in the collective bargaining process.

The "intent and purpose" of the Public Employees' Collective Bargaining Act is

to promote the continued improvement of the relationship between public employers and their employees by providing a uniform basis for implementing the right of public employees to join labor organizations of their own choosing and to be represented by such organizations in matters concerning their employment relations with public employers.

RCW 41.56.010.

The Act applies to all county and municipal governments as well as to many other political subdivisions of the State.[12] The Act authorizes public employees to be represented by unions,[13] and requires employers to bargain collectively with employees' representatives.[14]

---

[11]Laws of 1967, 1st Ex. Sess., ch. 108.

[12]RCW 41.56.020.

[13]RCW 41.56.040.

[14]RCW 41.56.100.

Collective bargaining is defined as

the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable times, to confer and negotiate in good faith, and to execute a written agreement with respect to grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions, which may be peculiar to an appropriate bargaining unit of such public employer, except that by such obligation neither party shall be compelled to agree to a proposal or be required to make a concession unless otherwise provided in this chapter.

RCW 41.56.030(4) (part).

An employer's refusal to engage in collective bargaining over a mandatory subject of bargaining is an unfair labor practice,[15] which may be remedied through the administrative process developed by the Public Employment Relations Commission.[16]

In 1973 the Act was amended to clarify the rights of uniformed law enforcement and fire department employees with respect to collective bargaining and strikes.[17] The purpose of the amendment was to establish an alternative to strikes by police officers and fire fighters in order to resolve labor disputes.[18] The Act thus provides for "interest" arbitration in cases where uniformed employees and their employers are unable to reach an agreement through collective bargaining negotiations.[19] Interest arbitration requires the employer and employees to submit unresolved issues which are mandatory subjects of collective bargaining (wages, hours and conditions of employment) to an arbitration panel. The arbitrators, in essence,

---

[15]RCW 41.56.140(4).

[16]RCW 41.56.160-.190.

[17]Laws of 1973, ch. 131, p. 368.

[18]RCW 41.56.430.

[19]RCW 41.56.450.

then decide what the parties' collective bargaining agreement will say.[20]

The Act also provides:

> The provisions of this chapter are intended to be additional to other remedies and shall be liberally construed to accomplish their purpose. Except as provided in RCW 53.18.015, if any provision of this chapter conflicts with any other statute, ordinance, rule or regulation of any public employer, the provisions of this chapter shall control.

RCW 41.56.905.

The specific section of the statute to be examined in the case before us provides:

> A public employer shall have the authority to engage in collective bargaining with the exclusive bargaining representative and no public employer shall refuse to engage in collective bargaining with the exclusive bargaining representative: *Provided, That nothing contained herein shall require any public employer to bargain collectively with any bargaining representative concerning any matter which by ordinance, resolution or charter of said public employer has been delegated to any civil service commission or personnel board similar in scope, structure and authority to the board created by chapter 41.06 RCW.*[21]

(Italics ours.) RCW 41.56.100 (part).

■ ■ In determining the meaning of the proviso, we recognize that the goal of statutory construction is to give effect to the intent of the Legislature.[22] Where the language of a statute is unambiguous, the statute is not subject to interpretation by the court.[23] An ambiguity exists if the language of the statute is susceptible to more than one

---

[20]RCW 41.56.450.

[21]The statute referred to in the proviso is the State Civil Service Law, RCW 41.06. That law, which was enacted in 1960 as the result of Initiative 207, creates and grants broad powers to the autonomous and independent state personnel board.

[22]*Cherry v. Municipality of Metro Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991); *Adams v. Department of Social & Health Servs.*, 38 Wn. App. 13, 16, 683 P.2d 1133 (1984).

[23]*Cherry*, 116 Wn.2d at 799.

meaning.[24] In this case, the proviso is susceptible to at least two meanings, and thus is subject to our interpretation.

■ In interpreting the Public Employees' Collective Bargaining Act we are guided by the legislative directive that the Act is remedial in nature and is to be liberally construed in order to effect its purposes.[25]

> A policy requiring liberal construction is a command that the coverage of an act's provisions be liberally construed and that its exceptions be narrowly confined.

*Nucleonics Alliance, Local 1-369 v. WPPSS*, 101 Wn.2d 24, 29, 677 P.2d 108 (1984).[26]

■ The purpose of the Public Employees' Collective Bargaining Act is to provide public employees with the right to join and be represented by labor organizations of their own choosing,[27] and to provide for a uniform basis for implementing that right.[28] With the purpose of the statute in mind we look to administrative and judicial constructions of the proviso as well as to other aids in construing this exception to collective bargaining.

Prior judicial constructions of the proviso are of limited assistance.

In *Seattle v. Auto Sheet Metal Workers Local 387*, 27 Wn. App. 669, 620 P.2d 119 (1980), *review denied*, 95 Wn.2d 1010 (1981), the City of Seattle filed a declaratory judgment action asking, among other things, that the superior court determine whether Seattle's civil service system was

---

[24]*Department of Transp. v. State Employees' Ins. Bd.*, 97 Wn.2d 454, 458, 645 P.2d 1076 (1982).

[25]RCW 41.56.905; *PUD 1 v. Public Empl. Relations Comm'n*, 110 Wn.2d 114, 119, 750 P.2d 1240 (1988); *Roza Irrig. Dist. v. State*, 80 Wn.2d 633, 639, 497 P.2d 166 (1972).

[26]*Accord, PUD 1*, 110 Wn.2d at 119.

[27]RCW 41.56.010; *International Ass'n of Firefighters, Local 469 v. Yakima*, 91 Wn.2d 101, 109, 587 P.2d 165 (1978).

[28]*PUD 1*, 110 Wn.2d at 116.

similar in scope, structure and authority to the state personnel board, thus exempting it from collectively bargaining with city employees. The trial court ruled that the city's civil service system was not similar in scope, structure and authority to the state board and, therefore, the City was required to bargain with its employees. This ruling of the trial court was not appealed.

In *Rose v. Erickson*, 106 Wn.2d 420, 721 P.2d 969 (1986), we merely held that where the sheriff's civil service statute and the collective bargaining act conflict, RCW 41.56.905 requires that the collective bargaining act must prevail.[29]

■■ The purpose of the Act is to recognize and implement the right of public employees to be represented by labor organizations and to participate in collective bargaining with respect to matters concerning their employment relations.[30] The exceptions to that right are to be narrowly construed[31] and we therefore narrowly construe the language of the proviso contained in RCW 41.56.100. Thus, in order for the City of Yakima to be exempt from collectively bargaining those matters which are mandatory subjects of bargaining and which the City delegates to its Civil Service Commission, that Commission must be similar in scope, structure and authority to the state personnel board.

■ Administrative interpretations of the proviso further support this construction of the Act. Since 1980, PERC's hearing examiners and its board have consistently interpreted the proviso to mean that a civil service commission must be similar in scope, structure and authority to qualify a city for exemption from bargaining.[32] The Commission's

---

[29]*Rose*, 106 Wn.2d at 424.

[30]RCW 41.56.010.

[31]*Nucleonics Alliance, Local 1-369 v. WPPSS*, 101 Wn.2d 24, 29, 677 P.2d 108 (1984).

[32]*See, e.g., International Ass'n of Firefighters, Local 1604 v. Bellevue*, Pub. Empl. Relations Comm'n Dec. 839 PECB (1980); *Walla Walla v. International*

interpretation of the statute, while not controlling, is given great weight in determining the legislative intent of the statute.[33]

The trial court held that the City of Yakima's civil service system was similar to the state personnel board. PERC held it was not. We agree with PERC.

■ While the general purpose of the state and local civil service systems is the same,[34] the scope, structure and authority of the state personnel board are far broader than those of the Yakima Civil Service Commission for police and fire. The state personnel board has the power to rule on a wide variety of subjects, including almost all working conditions, grievance procedures, and promotions.[35] The Yakima Civil Service Commission's authority is more limited.

The state personnel board members are appointed by the Governor, subject to confirmation by the Senate.[36]

> Persons so appointed shall have clearly demonstrated an interest and belief in the merit principle, shall not hold any other employment with the state, shall not have been an officer of a political party for a period of one year immediately prior to such appointment, and shall not be or become a candidate for partisan elective public office during the term to which they are appointed[.]

RCW 41.06.110(1) (part).

---

*Ass'n of Firefighters, Local 404*, Pub. Empl. Relations Comm'n Dec. 1999 PECB (1984); *International Ass'n of Fire Fighters, Local 1890 v. Wenatchee*, Pub. Empl. Relations Comm'n Dec. 2216 PECB (1985); *International Ass'n of Fire Fighters, Local 1604 v. Bellevue*, Pub. Empl. Relations Comm'n Dec..3156 PECB (1989).

[33]*Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 448, 536 P.2d 157 (1975).

[34]RCW 41.06.010, 41.08.040, 41.12.040.

[35]RCW 41.06.150.

[36]RCW 41.06.110.

The state personnel board and the personnel director enjoy autonomy and independence which insulate them from control by the state employer.[37]

The City of Yakima Civil Service Commission lacks that autonomy and independence. The city ordinance simply provides for appointment of members of the Civil Service Commission by the city manager, subject to the approval by a majority of the city council.[38] The civil service commissioners need not demonstrate any interest or belief in the merit principle. Nor are they prohibited from being city employees or from engaging in partisan politics either before or during their terms of office. The Commissioners may be removed from office for incompetency, *incompatibility*, dereliction of duty, malfeasance in office, or other good cause.[39] Where a commissioner may be removed from office by the employer for incompatibility, the Commission cannot be viewed as independent of the employer's control.

On the record before us, we cannot find the Yakima Civil Service Commission for police and fire to be similar in scope, structure and authority to the state personnel board. The City therefore is required to bargain collectively with its police and fire fighter unions with respect to wages, hours and other conditions of employment.

ISSUE TWO.

CONCLUSION. Where a controversy between a public employer and a union has been submitted to the Public Employment Relations Commission (PERC) the priority of action rule requires the superior court to decline to decide the controversy in a declaratory judgment action.

The second determinative issue in these consolidated cases is which tribunal — the superior court or PERC —

---

[37]*See, e.g.*, RCW 41.06.110, RCW 41.06.130.

[38]Yakima City Code 1.54.020.

[39]RCW 41.08.030; RCW 41.12.030.

had the authority to initially determine the ultimate issue in these cases.

Although the procedural history of these cases is somewhat tangled, the jurisdictional issue is fairly forthright. For purposes of clarity, only the suit involving the Fire Fighters will be discussed in this connection. The suit against the Police Officers was consolidated with the City's action against the Fire Fighters.

In August 1989, 6 months after PERC was asked to decide the dispute between the parties, the City filed a declaratory judgment action asking the Superior Court for Yakima County to resolve the dispute.

That court dismissed the declaratory judgment action, finding that the City had failed to exhaust its administrative remedies and that the priority of action rule required it to decline jurisdiction.

The day after the final order was entered by the trial court dismissing the 1989 declaratory judgment action, the City filed another declaratory judgment action against the Fire Fighters. The relief sought was the same as that in the 1989 action. The only difference in the factual basis for the 1990 action was that the Fire Fighters' old collective bargaining contract had expired and negotiations on a new bargaining agreement were underway.

The court declined to dismiss the 1990 declaratory judgment action, finding the issue to be different from that raised in the 1989 action, since the old collective bargaining agreement had expired and the question before the court in 1990 was how to interpret the statute with respect to the prospective agreement.

█ PERC unquestionably has authority to rule on unfair labor practice complaints.[40] Indeed, PERC is recognized both by statute,[41] and case law as possessing expertise in

---

[40]RCW 41.56.160.

[41]RCW 41.58.005(1), .010(2).

the labor relations area.[42] However, this expertise and authority do not divest the superior courts of jurisdiction in all cases to resolve unfair labor practice complaints which involve interpretation of public employee collective bargaining statutes.[43]

Both PERC and the court thus had the authority to resolve the question posed in this case.

The trial court ruled that the "priority of action rule" compelled it to decline jurisdiction in the 1989 action but allowed it to retain jurisdiction in the 1990 action. This rule is that

> the court which first gains jurisdiction of a cause retains the exclusive authority to deal with the action until the controversy is resolved. The reason for the doctrine is that it tends to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process.[44]

The priority of action rule applies to administrative agencies and the courts.[45] It generally applies only if the two cases involved are identical as to (1) subject matter; (2) parties; and (3) relief.[46] The identity must be such that a decision of the controversy by one tribunal would, as res judicata, bar further proceedings in the other tribunal.[47]

In this case, the 1989 complaint filed with PERC preceded the superior court complaint by about 6 months. The City's complaint for declaratory judgment asked for

---

[42]*Public Empl. Relations Comm'n v. Kennewick*, 99 Wn.2d 832, 841-42, 664 P.2d 1240 (1983).

[43]*See, e.g., State ex rel. Graham v. Northshore Sch. Dist. 417*, 99 Wn.2d 232, 240, 662 P.2d 38 (1983).

[44]*Sherwin v. Arveson*, 96 Wn.2d 77, 80, 633 P.2d 1335 (1981).

[45]*Mutual of Enumclaw Ins. Co. v. Human Rights Comm'n*, 39 Wn. App. 213, 692 P.2d 882 (1984).

[46]*Sherwin*, 96 Wn.2d at 80.

[47]*Sherwin*, 96 Wn.2d at 80.

relief identical to that which it requested in the PERC proceeding. We hold that the trial court properly dismissed the 1989 declaratory judgment action based on the priority of action rule.

The trial court refused to decline jurisdiction in the 1990 case, however, finding that the subject matters were not identical with the 1989 complaints because the 1990 issue related to a prospective contract rather than to an existing contract.

The issue in controversy in both cases was whether the City had a duty to bargain with the union with respect to matters delegated to the Civil Service Commission. The subject matter of the actions thus was identical. The distinction drawn between the two actions by the trial court was not, in our view, sufficient to support the Superior Court's acceptance of jurisdiction in view of the identity of legal issues and the parties involved, the identity of the remedies requested as well as the fact that the action was filed just 1 day after the City's first effort to have the court resolve the same conflict had failed.[48] Under the priority of action rule, we conclude that the trial court erred in not recognizing that the cause was pending before PERC and it should have declined to accept jurisdiction of the 1990 declaratory judgment action.

We hold that PERC had jurisdiction of the controversy and should have been permitted to conclude its process before the court took its turn, in a subsequent appeal, to review the issue. Having decided that PERC had jurisdiction under the priority of action rule, it is unnecessary to address the exhaustion of remedies issue argued by the parties.

■ The City additionally asks us to reverse the trial court's and PERC's refusal to allow the introduction into evidence of an affidavit of a former legislator to show legislative history and intent in enacting the Public Employees'

---

[48]*See, e.g., American Mobile Homes of Wash., Inc. v. Seattle-First Nat'l Bank,* 115 Wn.2d 307, 321-22, 796 P.2d 1276 (1990).

Collective Bargaining Act. The City attempted to introduce an affidavit of a former state legislator into evidence to prove legislative history and legislative intent. Both the trial judge and the PERC hearing examiner correctly declined to consider the affidavit.

The legislative history set forth in the affidavit is relevant but is available through the House and Senate Journals. The affiant's statements regarding legislative intent are inadmissible, it being well settled that the Legislature's intent in passing a particular bill cannot be shown by the affidavit of a legislator.[49]

In sum, we affirm the trial court's rulings with respect to the 1989 cases and affirm the decision of PERC as to the merits. We reverse the trial court's decision with respect to the 1990 case, and hold that a civil service commission must be similar in scope, structure and authority to the state personnel board before the exemption set forth in the proviso to RCW 41.56.100 relieves a public employer of its duty to collectively bargain. The trial court is reversed and the PERC ruling is affirmed. The case is remanded to PERC for consideration of the Fire Fighters' amended unfair labor practice complaint.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

---

[49]*Woodson v. State*, 95 Wn.2d 257, 264, 623 P.2d 683 (1980); *Pannell v. Thompson*, 91 Wn.2d 591, 598, 589 P.2d 1235 (1979).