[No. 29883-6-I.    Division One.    April 26, 1993.]

DON ABELS, ET AL, *Respondents,* v̇. SNOHOMISH COUNTY
PUBLIC UTILITY DISTRICT NO. 1, *Appellant.*

*Julian C. Dewell* and *Law Office of Anderson Hunter,* for appellant.

*W. Mitchell Cogdill* and *Cogdill & Carter,* for respondents.

SCHOLFIELD, J. — Appellant Snohomish County Public Utility District No. 1 (District) appeals from a trial court judgment granting to District employees (plaintiffs) the right to accrue up to 60 days' unused vacation time and, upon retirement, have the lump sum payment for the accrued vacation applied to the employees' final year compensation for purposes of computing pension benefits. We affirm.

A review of some background information is helpful in understanding the issues presented in this appeal. The relevant facts were stipulated and are not in dispute.

Prior to 1977, the District allowed its employees who were in the Public Employees Retirement System (PERS) to accrue and cash out more than 60 days of accrued vacation at or near retirement. At that time, the State of Washington and Department of Retirement Systems (DRS) allowed PERS employees to accrue up to 60 days' vacation pay and have that computed in each retired employee's average final compensation for purposes of determining pension benefits.

In 1977, the State Legislature established two classes of employees for purposes of PERS. These classes were PERS I employees (those who established membership in the retirement system on or before September 30, 1977), and PERS II employees (those who established employment on or after October 1, 1977). For PERS II employees, the definition of "compensation earnable" for purpose of retirement excluded "unused accumulated vacation".

In 1982 and prior thereto, District employees were permitted to receive lump sum payments for accrued vacation time upon termination, up to a maximum of 60 days, and these payments were treated as compensation by the State for the purpose of computation of that employee's pension. RCW 43.01.040 provides for vacations for state employees and permits accrual of vacation time up to a maximum of 30 days.

In 1982, the State Legislature amended RCW 43.01.040. The amendment prohibited state departments and agencies

from paying employees accrued vacation leave on termination of employment except in the case of death. Laws of 1982, 1st Ex. Sess., ch. 51, § 2. In May 1982, the District adopted resolution 2602, which authorized written agreements with employees concerning payment at termination for accrued vacation time up to a maximum of 60 days. In resolution 2602, the District acknowledged that due to the urgency of District business, there were occasions when District employees were prevented from using all accrued vacation time as vacation leave. The District also acknowledged that it was necessary to implement a policy for vacation accruals "to encourage employment with the District and to avoid a disruption of District operations from employees being required to take all of their accrued vacation benefits as leave". Exhibit 8.

The main body of resolution 2602 then provides in part:

> NOW, THEREFORE, BE IT RESOLVED, that the following policy shall be effective immediately and shall remain in effect until the Commission acts to amend, modify, or repeal these policies. The Manager is hereby directed to implement the policy of this Resolution by executing agreements with all present and future District employees which provide the employees with the option of taking vacation time earned after July 1, 1982, in the form of vacation leave, to the extent permitted by Commission resolution or District policy, or to accrue said time, to the extent permitted by Commission resolution or District policy, up to a maximum of sixty days and thereafter to receive an annual lump sum payment for any vacation time which is earned and not used or required to be used as vacation leave. . . . The agreement shall further provide for payment to the employee at termination for vacation time accrued in the employment of the District up to a maximum of sixty days.

Exhibit 8.

Pursuant to resolution 2602, the District entered into individual agreements with its employees. The agreements stated:

> The following agreement between Public Utility District No. 1 of Snohomish County ("District") and the undersigned employee is entered into pursuant to Commission Resolution No. 2602 adopted on May 11, 1982, as amended.

The parties hereby agree as follows:

1.) Vacation time earned by the undersigned employee on or after July 1, 1982 may be taken as leave, to the extent permitted by Commission resolution or District policy, or may accrue as leave, to the extent permitted by Commission resolution or District policy. Where the undersigned employee has properly accrued vacation time in excess of sixty days, the employee shall be paid annually for all time earned in excess of sixty days, and not used or required to be used as vacation leave. Payment shall be made in January of the year following the calendar year in which such vacation time is earned. Further, payment shall be at the wage rate in effect on December 31, of the year preceding payment.

2.) The District shall pay the undersigned employee at termination for vacation time properly accrued in the employment of the District up to a maximum of sixty days.

3.) In the event that a competent authority determines that this agreement is in violation of any statute or regulation, the obligation of the District under the Agreement shall cease.

All plaintiffs in this case are PERS I employees, and all of them signed the agreements authorized by resolution 2602.

In February 1983, the Supreme Court ruled the 1982 amendment to RCW 43.01.040 impaired the contractual pension rights of state employees and thereby violated Const. art. 1, § 23. *See Washington Fed'n of State Employees v. State*, 98 Wn.2d 677, 658 P.2d 634 (1983).

The State Legislature enacted legislation effective March 15, 1984, Laws of 1984, ch. 184, § 1, p. 888 (SHB 843), which provided that all accumulated vacation time in excess of 30 days or 240 hours, paid at the time of retirement or within 24 months thereof, would be considered as "excess compensation", and that the State of Washington could bill the employer for the "total estimated cost" of all retirement benefits "attributable to the excess compensation". Finding of fact 18.

Following enactment of this legislation, DRS sent a memorandum to all public employers explaining that the new enactment did not change retirement benefits in any way, but simply enacted a change in who will pay for benefits created by excess compensation.

Up to March of 1985, resolution 2602 and the agreements entered into with District employees pursuant to resolution 2602 remained in full force and effect.

The District desired to maintain existing pension benefits for its PERS I employees, and to that end adopted resolution 2768 on March 13, 1984. Resolution 2768 reaffirmed existing retirement benefit practices and provided that if required by the operation of SHB 843 to make payments to DRS in order to maintain existing pension benefits, the District would do so.

On February 12, 1985, the District did an about-face and adopted resolution 2845, in which it referred to the substantial cost that would be involved if the District were to continue the payments authorized under resolution 2768, and resolved in part as follows:

> That the District shall not maintain a vacation program that will obligate the District to the funding of pension benefits based on payments for "excess compensation" attributable to vacation accruals as may be required by Chapter 184 Laws of 1984.

Exhibit 12. The resolution further provided that resolution 2768 as of midnight, March 31, 1985, was repealed.

The intended effect of resolution 2845 was to put in effect a policy whereby District employees who were members of PERS I could receive no more than 30 days of accrued vacation in the form of a lump sum payment at retirement. Since retirement benefits based upon a lump sum payment for 30 days of accrued vacation would be paid by the State, resolution 2845 eliminated any burden on the District for the funding of pension benefits based on payments classified as "excess compensation" by Laws of 1984, ch. 184.

In March 1985, the District adopted resolution 2848 which, among other effects, repealed resolution 2602 and provided that PERS employees shall receive no more than 30 days of accrued vacation in the form of a lump sum payment, and all other accrued vacation had to be used prior to retirement or termination.

Paragraph 5.2.2 of the collective bargaining agreement between the District and Local 77, International Brotherhood of Electrical Workers, for the period April 1, 1985, through March 31, 1988, provides in part:

> (c) At the time of retirement, the District will pay to the employee a maximum of 240 hours of accrued, unused vacation, as well as all appropriate accrued severance for the years of employment.
> (d) At the time of retirement any vacation remaining which exceeds 240 hours will be lost.

Exhibit 23.

This suit was commenced August 15, 1988. Some of the plaintiffs are union members and some are not. All of the plaintiffs are members of PERS I and are either current or retired employees of the District.

The trial court held that through a combination of administrative practice and individual contracts, the plaintiffs had a vested right to accumulate 60 days' vacation and have a lump sum payment therefor treated as compensation for the purpose of calculating retirement benefits. The trial court rejected the District's argument that the right to accumulate vacation was subject to change or elimination through the collective bargaining process. In so holding, the trial court relied upon *Bakenhus v. Seattle*, 48 Wn.2d 695, 296 P.2d 536 (1956) and *Washington Fed'n of State Employees v. State*, *supra*. The trial court treated this case as a "pension case" with rights fixed as of date of hire.

We agree with the trial court.

### Vested Rights Can Be Created by Contract

The landmark decision in this area is *Bakenhus v. Seattle*, *supra*. Bakenhus was a retired Seattle police officer who sued Seattle, challenging a policy which set a maximum of $125 per month on police pensions. When he commenced his employment with Seattle in 1925, he was entitled to receive one-half of the salary which he received during the last year before his retirement. His salary during that year was $370

a month. *Bakenhus*, at 696-97. Bakenhus obtained a judgment directing that he be paid a pension of $185 a month, and also a judgment for the difference between the pension he had been paid from the date of his retirement and the amount he should have received at the rate of $185 per month.

On appeal, the City argued that there was no contract between the employee and the City until the employee had fulfilled all of the conditions necessary to entitle him to payment of a pension. The Supreme Court rejected that argument, holding that the promise on which the employee relies is that promise which is made at the time he enters employment and that the pension obligation of the employer is based upon promises made to the employee at time of hire. The court held that pension rights may be modified after date of hire and prior to retirement only for the purpose of keeping the pension system flexible and maintaining its integrity. *Bakenhus*, at 701.

*Eagan v. Spellman*, 90 Wn.2d 248, 581 P.2d 1038 (1978) addressed the question of whether a county ordinance reducing the mandatory retirement age from 70 to 65 impacted the plaintiff's pension rights or was merely a matter of tenure. When Eagan commenced her employment, the mandatory retirement age in King County for persons in her classification was 70. King County enacted an ordinance after Eagan commenced work which changed the mandatory retirement age to 65. The *Eagan* court ruled that the reduction in retirement age violated plaintiff's rights under PERS, RCW 41.40. Following the teaching of *Bakenhus*, the *Eagan* court held at page 252:

> At the time she became a member of PERS, Eagan acquired a vested right to a potential date of retirement and is entitled to have this right mature into a retirement allowance at age 70, subject, of course, to not being separated from employment by factors outside of PERS, *i.e.*, factors truly relating to tenure.

The *Eagan* court held that when Eagan was separated from employment at age 65, this was in violation of the

agreement made with her by King County. At page 253, the court stated:

> The county cannot now by the back-door device of early retirement under the personnel ordinances fail to follow its promises made under the pension statutes.

In 1982, the State Legislature passed legislation providing that state employees under PERS could no longer receive lump sum payments for accrued vacation time upon terminating their employment unless terminated by death. In *Washington Fed'n of State Employees v. State*, 98 Wn.2d 677, 658 P.2d 634 (1983), the court ruled this legislation unconstitutional, as it altered the pension rights of PERS I employees. The court noted that, by established practice, the state retirement system's board had long allowed retiring employees to include lump sum payments in computing their "average final compensation" for the purpose of determining pension benefits. *Washington Fed'n of State Employees*, at 679-80.

The court denied the State's claim that the legislation related to an employee's compensation, and not to pension rights, stating that the legislative history for the law reflected a concern by proponents over the cost of increased pension benefits enjoyed by PERS I employees. *Washington Fed'n of State Employees*, at 684-85. The legislation was intended, the court concluded, to impact pension benefits. The court also rejected the State's claim that the *Bakenhus* rule was inapplicable because the legislation had only an indirect effect on pension rights. At page 686, the court stated:

> *Bakenhus* . . . should not be read in such a limited context. The rule announced therein stands for the proposition that pension rights are contractual rights which vest at the beginning of the employment relationship. The State cannot alter that contract without mutual consent. Where the change is favorable to the employee, consent may be implied. *Dailey v. Seattle*, 54 Wn.2d 733, 738, 344 P.2d 718 (1959). Conversely, where the change is disadvantageous, consent will be presumed not to have been given unless the change is made concurrently with an added benefit. *Dailey*, at 739.

The application of the *Bakenhus* rule does not hinge on the *means* by which pension rights are affected, but on the fact that they *are* affected. This was made clear by *Eagan v. Spellman, supra,* wherein this court struck down what it termed "a back-door amendment" to the pension provisions. Just as a change in the age of mandatory retirement adversely affects the potential pension, so does a change in the policy regarding payments for unused vacation time.

The key to the validity of the employees' claims is that they are claims based upon a contract between each employee and the District which involves pension rights.

The contracts were entered into pursuant to express authorization contained in resolution 2602. That resolution contains language protecting the right of the District to modify or repeal the policy stated therein as to future employees, but it contains no provision attempting to give a modification retroactive effect. The form of agreement authorized by resolution 2602 grants employees the right to accumulate vacation time to a maximum of 60 days and to be paid for that time in a lump sum at termination. The agreement permits accumulation of vacation time to "the extent permitted" by District policy. Like resolution 2602, there is no suggestion in the agreement that should the District change its policy, it could have the retroactive effect of reducing or eliminating rights acquired by the employees by entering or continuing employment during the time the stated policy of resolution 2602 remained in full force and effect.

The right of vacation accrual contained in the individual agreements has a clear and direct impact upon pensions, and therefore qualifies under the law of this State as a "pension" right. The District, in resolution 2602, expressly provided for payment by lump sum upon termination, which was a recognized and established practice for augmenting pension benefits. Furthermore, in resolution 2768, the District acknowledged that accrued vacation time was an "existing retirement benefit policy". This was followed by resolution 2845, which expressly dealt with revision of its policy in respect to "pension benefits due to 'excess compensation' payments attributable to vacation accruals".

■ It is the law of this State that an employee has a vested right in the pension or retirement system in effect when he becomes a qualified employee, or which becomes effective during his employment, and that system cannot be altered to his detriment without a corresponding benefit to him. *Bakenhus v. Seattle*, 48 Wn.2d 695, 296 P.2d 536 (1956); *Eagan v. Spellman, supra*; *Washington Fed'n of State Employees v. State, supra*; *Frank v. Day's, Inc.*, 13 Wn. App. 401, 405, 535 P.2d 479 (1975).

While *Bakenhus*, *Eagan*, and *Washington Fed'n of State Employees* all involve city, county, or state employment, the theory employed in all of them is that pension benefits are contractual in nature. The same theory and reasoning supporting a vesting of pension rights applies to rights established through voluntary agreements between employer and employee. *Frank v. Day's, Inc., supra* at 404.

In resolution 2848, the District repealed resolution 2602 and adopted a retirement policy for PERS employees limiting lump sum payments for accrued vacation to payment of 30 days. This resolution was adopted March 5, 1985. The District then entered into a collective bargaining agreement with Local Union 77 for the period April 1, 1985, through March 31, 1988. Because that agreement contained provisions consistent with the new District policy as expressed in resolution 2848, the District argues that the combination of the collective bargaining agreement and resolution 2848 had the effect of modifying the right to accrue vacation time for all employees, including the plaintiffs in this case.

It should be kept in mind that a substantial number of the plaintiffs are not members of the union. The union cannot speak for them.

■ As to the union members, we view the collective bargaining agreement as a contract separate and distinct from the private agreements entered into between the District and each individual plaintiff pursuant to resolution 2602. The collective bargaining agreement relied upon by the District did not have the legal effect of invalidating those private agreements.

While the collective bargaining agreement addresses vacations and sets a maximum of 240 hours of accrued vacation to be paid in a lump sum at retirement, it does not address or mention in any way the existence of the private agreements, or the intended effect, if any, of the collective bargaining agreement on the continuing validity of those agreements.

The District has for many years made it a practice to give non-union employees any benefits gained by union employees in a collective bargaining agreement. The collective bargaining agreement could not affect the right of the non-union employees described in the private agreement. Had the District tried to enter into a collective bargaining agreement which would have invalidated the private agreement as to union members, it would have left non-union members with the right to accumulate 60 days' vacation, while union members could accumulate only 30 days' vacation. This result would have been contrary to longstanding District policy and would not have been favored by Local 77 in any event.

The private agreements remain valid and enforceable by the plaintiff-employees in this case, whether members of the union or not. The trial court was correct in so ruling.

Other issues were raised in this appeal, the answers to which are influenced by our decision that the private agreements are valid and enforceable.

### WAS LABOR UNION A NECESSARY PARTY?

The District contends the union was a necessary party in this litigation because it was necessary to alter, amend, or preclude the enforcement of a collective bargaining agreement.

CR 19(a) in part provides as follows regarding joinder of parties:

> (a) **Persons To Be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties,

or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (A) as a practical matter impair or impede his ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

The central issue in this case is whether or not the private agreements between the plaintiff employees and the District remain valid and enforceable. The presence of the union as a party is not necessary to a decision resolving that issue. While an argument can be made that the right of the union as an exclusive bargaining representative is being challenged in this case, it is our conclusion that if such a challenge exists at all, it is peripheral only. The principal reason for this is that the collective bargaining agreement makes no pretext whatsoever of addressing the validity of the private agreements. A collective bargaining agreement which does not challenge the validity of a private agreement entered into by an employee is not being challenged when that private agreement is held valid and enforceable. Local 77 is not an indispensable party to this proceeding.

### TRIAL COURT JURISDICTION

The District claims that the trial court had no jurisdiction in this matter because jurisdiction lies under the Labor Management Relations Act, 1947 (LMRA), 29 U.S.C. § 185.

Section 301(a) of LMRA, 29 U.S.C. § 185(a), does not grant federal court jurisdiction over the claims of an individual employed by a political subdivision of a state. *Ayres v. International Bhd. of Elec. Workers*, 666 F.2d 441, 444 (9th Cir. 1982). Therefore, this case is not preempted by LMRA, and the District's reliance on *Joy v. Kaiser Aluminum & Chem. Corp.*, 62 Wn. App. 909, 816 P.2d 90 (1991) is misplaced, as that case involved a private employer. Furthermore, the claims in this case are not based on the provisions of a collective bargaining agreement.

The District next claims this dispute is under the jurisdiction of the Public Employment Relations Commission (PERC). The employees counter that PERC jurisdiction extends only to a "labor dispute", which is defined under WAC 391-08-007(4) as an issue involving a term or condition of employment.

Although vacation pay is generally considered a term or condition of employment, *see Singer Mfg. Co. v. NLRB*, 119 F.2d 131, 136 (7th Cir.), *cert. denied*, 313 U.S. 595 (1941), this fact is not dispositive of the jurisdiction issue. PERC has authority to rule on unfair labor practice complaints and has jurisdiction over labor relations between public utility districts and their employees. *See PUD 1 v. Public Empl. Relations Comm'n*, 110 Wn.2d 114, 121, 750 P.2d 1240 (1988); *Yakima v. International Ass'n of Fire Fighters, Local 469*, 117 Wn.2d 655, 818 P.2d 1076 (1991). However, PERC's expertise and authority in the labor relations area do not divest the superior courts of jurisdiction in all cases to resolve unfair labor practice complaints which involve interpretation of public employee collective bargaining statutes. *Yakima*, at 675. This case was initially filed in superior court. We hold that court properly retained jurisdiction.

In *State ex rel. Graham v. Northshore Sch. Dist. 417*, 99 Wn.2d 232, 242, 662 P.2d 38 (1983), the court rejected PERC's claim of primary jurisdiction and concluded that a case decided on stipulated facts and involving only an interpretation of a statute — a question of law within the conventional competence of the court — was properly decided in state court. This case is analogous to *Northshore* in that it involves legal issues arising out of stipulated facts, and special expertise in labor law is not necessary to the resolution of the contractual issues raised in this case.

The District also argues that the trial court had no jurisdiction under RCW 49.32.050. That statute states in part that:

> No court of the state of Washington shall have jurisdiction to issue any restraining order or temporary or permanent

injunction in any case involving or growing out of any labor dispute or prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts: . . .[.]

The judgment entered by the court in this case permanently enjoined the District from "taking any action to limit and/or reduce the right of plaintiffs to accrue up to sixty (60) days of vacation and to be cashed out at or near the time of their retirement for such accrued vacation up to sixty (60) days."

A "labor dispute" is defined under RCW 49.32.110(3) as

any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

█ While a right to accrue vacation time may arguably be a "[term] or [condition] of employment", the trial court's injunction in this case was issued solely for the purpose of enforcing the trial court's decision holding a private agreement to be valid and enforceable. The case does not involve any of the issues delineated in RCW 49.32.050(1)-(9), and indeed, the injunction probably was not necessary to obtain compliance with the court's judgment. We conclude that the function of the trial court in this case was within its jurisdiction as established by Const. art. 4, §§ 1, 6 (amend. 65) establishing the judicial powers of the State. *Bloedell Donovan Lumber Mills v. International Woodworkers, Local 46*, 4 Wn.2d 62, 75, 102 P.2d 270 (1940); *Burke & Thomas, Inc. v. International Org. of Masters*, 92 Wn.2d 762, 776, 600 P.2d 1282 (1979).

### Attorney's Fees

The District challenges the award of substantial attorney's fees to respondents pursuant to RCW 49.48.030, which reads as follows:

In any action in which any person is successful in recovering judgment for wages or salary owed to him, reasonable attor-

ney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer: PROVIDED, HOWEVER, That this section shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary.

In *Naches Vly. Sch. Dist. JT3 v. Cruzen,* 54 Wn. App. 388, 775 P.2d 960 (1989), three retired teachers recovered judgment for substantial sums against the school district for accumulated sick leave. The court held sick leave cashouts represented wages under RCW 49.48.030.

Many of the respondents in this case are not recovering a money judgment, but are establishing their rights to receive payment for accumulated, unused vacation time up to a maximum of 60 days at a time when the lump sum payment will augment pension benefits. Seven of the respondents have retired and were granted judgments as follows:

> Each plaintiff who has retired or who may retire by the time this judgment is enforced shall be entitled to judgment against defendant in an amount equal to all vacation accrual lump sum payments in excess of thirty (30) days up to a maximum of sixty (60) days which have been impermissibly withheld from said retired employees.

There are cases where attorney's fees are not allowable on all of the claims established by the prevailing party. In such cases, it is necessary that work done on a claim where attorney's fees are allowed be segregated from other claims where no attorney's fees are allowed. *Gaglidari v. Denny's Restaurants, Inc.,* 117 Wn.2d 426, 450, 815 P.2d 1362 (1991).

In the case before us, the employees presented a single claim relating to their rights in respect to accumulated vacation time. The trial court judgment applies to all of the employees. The seven who were retired as of the date of the judgment, December 18, 1991, were given a specific form of relief because of their retired status. Eventually, all of the plaintiffs will presumably reach the same status as those who were retired as of December 18, 1991.

■ Our review of the record tells us there is no practical way of segregating some of the employees' claims for purposes of awarding attorney's fees because the case was

presented as a single claim relating to accrued vacation time. Under these circumstances, we find the trial court did not abuse its discretion in awarding reasonable attorney's fees based on services rendered by counsel in presenting the entire case. The central issue in this case is what effect accumulated vacation time will have on a terminating or retiring employee. It is not a case of whether it will be paid, but when, and in what amount. However, it does directly involve the payment of compensation for employment, and thus falls within the broad definition of " 'compensation due to an employee by reason of employment' " as approved in *Gaglidari v. Denny's Restaurants, Inc., supra* at 449 (quoting *Hayes v. Trulock*, 51 Wn. App. 795, 806, 755 P.2d 830, *review denied*, 111 Wn.2d 1015 (1988)).

Because plaintiffs are entitled to attorney's fees below, they are also entitled to reasonable attorney's fees on appeal.

Judgment affirmed.

WEBSTER, C.J., and PEKELIS, J., concur.

Reconsideration denied June 15, 1993.

Review denied at 122 Wn.2d 1024 (1993).