[No. 17956-7-III. Division Three. December 21, 1999.]
THE CITY OF SPOKANE, ET AL., *Respondents*, v. THE SPOKANE CIVIL SERVICE COMMISSION, *Appellant*.

---

*Mary R. Giannini* and *Duane M. Swinton* of *Witherspoon, Kelley, Davenport & Toole, P.S.*, for appellant.

*James C. Sloane, City Attorney,* and *Patrick J. Dalton, Assistant,* for respondent City of Spokane.

*Otto G. Klein* of *Summit Law Group, P.L.L.C.*; and *Christopher K. Vick,* for respondent Spokane Police Guild.

KATO, J. — The City of Spokane (City) and the Spokane Police Guild (Guild) entered into a collective bargaining agreement which changed the process of promoting a patrolman to sergeant. The City and the Guild advised the Spokane Civil Service Commission (Commission) about this change, but the Commission refused to recognize it. The City and the Guild then sought a declaratory judgment or,

alternatively, a writ of review. The court entered a declaratory judgment and summary judgment in favor of the City and the Guild and ordered the Commission to comply with the change. The Commission appeals. We affirm.

Prior to 1996, the Commission had sole responsibility for promoting a uniformed patrolman to sergeant under the City charter. The Commission used a multiple-choice examination to determine who should be promoted and made each promotion based on the "rule of one." Under this rule, the highest ranked candidate on the exam was the person certified to the police department for promotion.

The Guild is the authorized bargaining representative for all Spokane Police Department employees below the rank of lieutenant. In 1996, the City and the Guild entered into a binding collective bargaining agreement (Agreement) in accordance with RCW 41.56. As part of the Agreement, the parties negotiated a new procedure for promoting a uniformed patrolman to sergeant. The City and the Guild agreed that an assessment center, a process to further evaluate candidates, should be used to supplement the Commission's testing procedure. The assessment center would evaluate the leadership and supervisory abilities of the top 12 scorers on the civil service exam and determine who was the best qualified patrolman for promotion.

In November 1997, the City and the Guild informed the Commission about the change in promotion procedure. Under the new system, the Commission was required to provide the names of the top 12 scorers on the exam to the City. The Commission decided to conduct a hearing before complying with the change.

On December 16, 1997, the Commission elected not to recognize the change and chose to follow its normal procedures. The City and the Guild were advised it would not certify the pay for any individual who was promoted to sergeant under the new procedure.

The City and the Guild then brought this action requesting a declaratory judgment to establish the legal rights

among the parties or, alternatively, a writ of review. The Commission filed a cross claim for a writ of prohibition. Thereafter, both parties filed motions for summary judgment. The court determined that the collective bargaining agreement superseded the civil service rules and entered a declaratory judgment and summary judgment in favor of the City and the Guild. It ordered the Commission to comply with the Agreement and dismissed the writ of prohibition. This appeal follows.

■ The Commission contends that the court erred by entering a declaratory judgment requiring it to abide by the Agreement's promotion procedures. Ordinary rules of appellate procedure apply to an appeal from a declaratory judgment. *Simpson Tacoma Kraft Co. v. Department of Ecology*, 119 Wn.2d 640, 646, 835 P.2d 1030 (1992). In a declaratory judgment action, " '[a]ll orders, judgments and decrees . . . may be reviewed as other orders, judgments and decrees.' " *Id.* (quoting RCW 7.24.070 and *Nollette v. Christianson*, 115 Wn.2d 594, 599, 800 P.2d 359 (1990)).

■ Here, the trial court not only granted the motion for declaratory relief, but also granted the City and the Guild's motion for summary judgment. Accordingly, we will engage in the same inquiry as the trial court when reviewing its order of summary judgment. *Simpson*, 119 Wn.2d at 646. A summary judgment motion can be granted only when no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. *Id.* The court must consider the facts in the light most favorable to the nonmoving party; the motion should be granted only if reasonable persons could reach but one conclusion. *Id.*

This court must determine (1) if a conflict exists between the Public Employees' Collective Bargaining Act, RCW 41.56, and the rules for police civil service commissions under RCW 41.12; and, if so, (2) which statutory scheme prevails. In making this determination, it is helpful to consider the history and purposes of both statutory schemes.

In 1883, civil service systems began with the passage of

the federal civil service act. *City of Yakima v. International Ass'n of Fire Fighters, Local 469*, 117 Wn.2d 655, 664, 818 P.2d 1076 (1991). In 1937, the Washington Legislature enacted RCW 41.12, establishing a civil service system for city police. *Id.* The reason for a civil service system governing police was to protect them from arbitrary or discriminatory actions by their employers in hiring, promotions, discipline, and discharge, and to ensure that the public was protected by qualified police personnel. *Id.* at 664-65.

While public employees relied on civil service systems to protect their employment status, private sector employees relied on collective bargaining. *City of Yakima*, 117 Wn.2d at 666. In the mid-1960s, public employees began to view civil service systems as an extension of management and demanded collective bargaining on issues traditionally left to civil service commissions. *Id.*

Thus, in 1967, the Legislature enacted RCW 41.56, the Public Employees' Collective Bargaining Act. *Id.* at 667. RCW 41.56.010 states:

> The intent and purpose of this chapter is to promote the continued improvement of the relationship between public employers and their employees by providing a uniform basis for implementing the right of public employees to join labor organizations of their own choosing and to be represented by such organizations in matters concerning their employment relations with public employers.

The Act applies to all county and municipal governments. RCW 41.56.020. Collective bargaining is defined as:

> the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable times, to confer and negotiate in good faith, and to execute a written agreement with respect to grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions, which may be peculiar to an appropriate bargaining unit of such public employer, except that by such obligation neither party shall be compelled to agree to a proposal or be required to make a concession unless otherwise provided in this chapter.

RCW 41.56.030(4). A public employer is required to collectively bargain with employees except in a limited situation:

> A public employer shall have the authority to engage in collective bargaining with the exclusive bargaining representative and no public employer shall refuse to engage in collective bargaining with the exclusive bargaining representative: PROVIDED, That nothing contained herein shall require any public employer to bargain collectively with any bargaining representative concerning any matter which by ordinance, resolution or charter of said public employer has been delegated to any civil service commission or personnel board similar in scope, structure and authority to the board created by chapter 41.06 RCW.

RCW 41.56.100. Failure to bargain is an unfair labor practice. RCW 41.56.140(4). The Legislature intended this Act to be construed liberally and to supersede other statutes and rules governing public employment:

> The provisions of this chapter are intended to be additional to other remedies and shall be liberally construed to accomplish their purpose. Except as provided in RCW 53.18.015, if any provision of this chapter conflicts with any other statute, ordinance, rule or regulation of any public employer, the provisions of this chapter shall control.

RCW 41.56.905.

This case involves promotion procedures, which are normally considered a mandatory subject of bargaining. *International Ass'n of Fire Fighters, Local 1537 v. City of Anacortes*, No. 5668, 1996 WL 586494 at *4 (Wash. Pub. Emp. Rel. Comm'n Sept. 13, 1996). The Washington Public Employment Relations Commission's (PERC) interpretation of the Act is entitled to great weight in determining the legislative intent of the statute. *City of Yakima*, 117 Wn.2d at 671-72. Pursuant to RCW 41.56.100, the City was therefore required to collectively bargain with the Guild regarding promotions.

But our Supreme Court has stated that a city may be exempt from collectively bargaining those matters which

are mandatory subjects of bargaining if it has delegated those matters to a civil service commission that is similar in scope, structure, and authority to the state personnel board. *City of Yakima*, 117 Wn.2d at 671. The Commission claims it meets those requirements and the exemption applies. The City and the Guild disagree.

The "scope" of a civil service commission or personnel board refers to that body's jurisdiction or power to take various actions. *International Ass'n of Fire Fighters, Local 469 v. City of Yakima*, No. 3503, 1990 WL 656208 at *28 (Wash. Pub. Emp. Rel. Comm'n June 1990). The state personnel board has jurisdiction over a wide range of state employees, with exclusions limited to employees of the Legislature, employees of the judicial branch, statewide elected officials, chief executive officers of agencies, and confidential agency employees. *Id.* The Spokane Civil Service Commission has jurisdiction over all city employees except (1) elected officials, (2) individuals appointed to boards and commissions, (3) appointed officers as specified by the City charter, (4) seasonal positions, and (5) other positions as excluded by law or the Commission. Thus, the Commission is similar in scope to the state personnel board.

The "structure" of a civil service commission or personnel board relates to the organization of the body, including the manner in which the members are appointed and removed. *International Ass'n of Fire Fighters*, 1990 WL 656208 at *29. The three members of the state personnel board are appointed by the Governor and subject to confirmation by the Senate. *Id.* Persons appointed shall have demonstrated an interest and belief in the merit principle, shall not hold any other employment with the State, shall not have been an officer of a political party for a period of one year immediately prior to appointment, and shall not be or become a candidate for partisan elective office. *Id.* (citing RCW 41.06.110).

The Commission consists of five members. Two members are appointed by the Spokane City Council, one appointed by the cochairman of the Spokane Public Safety Commit-

tee, and one appointed by the employee members of the Spokane Employees Retirement Board. Those four members then appoint the fifth member. Only elected officials and City employees cannot serve on the Commission.

It is not a requirement for Commission members to have demonstrated an interest or belief in the merit principle. Furthermore, nothing prevents members from engaging in partisan political activities either before or during their term. In light of these differences, the Commission is not similar in structure to the state personnel board. *See International Ass'n of Fire Fighters*, 1990 WL 656208 at *29.

■ The "authority" of a civil service commission or personnel board relates to the breadth of subject matters covered or regulated by that body. *International Ass'n of Fire Fighters*, 1990 WL 656208 at *30. The state personnel board is authorized to promulgate rules and regulations on the full range of personnel matters, including wages, insurance and other wage-related benefits, shift premiums, callback compensation, standby compensation, workers' compensation, classification of employees, hours of work, compensatory time, training, and performance evaluation. *Id.*

The Commission does have a wide range of authority with respect to classifying positions in the civil service and the testing for those positions. It also certifies payroll. However, review of Commission rules and the applicable portion of the City charter establishes that the Commission's authority is not nearly as broad as that of the state personnel board. The Commission has no authority over wages or wage-related matters, call-back compensation, standby compensation, workers' compensation, compensatory time, training or performance evaluations. The Commission is not similar in authority to the state personnel board.

In order for the RCW 41.56.100 exemption to apply, a civil service commission must be similar to the state personnel board in all three areas: scope, structure, and

authority. *International Ass'n of Fire Fighters*, 1990 WL 656208 at *30. The Commission does not meet this requirement so the exemption does not apply.

Under RCW 41.56.100, the City was required to collectively bargain with the Guild on all mandatory subjects, including promotions. The City complied with this duty. But the Commission refused to abide by the Agreement, claiming that its rules—not the Agreement—governed promotion procedure.

RCW 41.56.905 states "if any provision of this chapter conflicts with any other statute, ordinance, rule or regulation of any public employer, the provisions of this chapter shall control." The City argues that this statute clearly indicates that the promotion procedures in the Agreement control. Contending that RCW 41.56.905 does not apply because there is no actual conflict between a collective bargaining act provision and either RCW 41.12 or its rules, the Commission disagrees.

In *City of Bellevue*, No. 3156-A, 1990 WL 693212 (Wash. Pub. Emp. Rel. Comm'n Jan. 29, 1990), PERC discussed RCW 41.56.905 and when a conflict would be deemed to exist. There, the City of Bellevue established a civil service commission for police and firemen pursuant to RCW 41.08 and 41.12. *Id.* at *1. The commission changed its rules and regulations. *Id.* at *2. Although some of the changes pertained to mandatory subjects of collective bargaining, the commission implemented rules which were in direct conflict with the collective bargaining agreement. *Id.* The employees filed an unfair labor practice action. *Id.* The commission argued that RCW 41.08 authorized the rule changes. *Id.* at *4. PERC agreed that the changes were so authorized. Because the changes dealt with mandatory subjects of collective bargaining, however, the collective bargaining agreement prevailed pursuant to RCW 41.56.905. *Id.* at *5. Determining that a statutory conflict existed, PERC said:

> No action or omission by the Bellevue Civil Service Commission, per se, creates a problem here. It is the failure of the

City of Bellevue to bargain that we scrutinize. We could simply order the city to bargain with the union before the rules are put into effect. The city appears to argue, however, that it has no control over when the Civil Service Commission implements its rules. Therefore, we believe there is a statutory conflict. Our ruling simply prevents an employer from implementing such rules concerning mandatory bargaining subjects for union-represented employees until it satisfies its bargaining obligation under the Public Employees' Collective Bargaining Act.

*Id.* at \*6.

Although the situation here presents different facts, a statutory conflict nonetheless exists. The City collectively bargained with the Guild, but the Commission refused to abide by those changes. The City lacks the authority to force the Commission to comply with the Agreement. Without the Commission's cooperation, the City cannot abide by the Agreement's terms. There is a statutory conflict and, under RCW 41.56.905, the terms of the Agreement control.

▮ Moreover, the purpose of the Act is to provide public employees with the right to join and be represented by labor organizations of their own choosing and to provide a uniform basis for implementing that right. *City of Yakima v. International Ass'n of Fire Fighters, Local 469*, 117 Wn.2d 655, 670, 818 P.2d 1076 (1991). The purpose of the Act is not served if a city complies with its obligation to collectively bargain, only to have the civil service commission refuse to abide by the collective bargaining agreement. The intent of the Act requires the Commission's actions here to be prohibited.

In *International Ass'n of Fire Fighters, Local 469 v. City of Yakima*, No. 3503-A, 1990 WL 656209, at \*11 (Wash. Pub. Emp. Rel. Comm'n 1990), PERC discussed in dicta the situation presented here:

If the bargaining process results in an agreement to handle certain matters differently than specified in the applicable civil service rules, civil service commissions have the authority, by

statute, to change their rules. If a civil service commission adopts new rules on mandatory subjects only after a public employer has satisfied its bargaining obligation, and the rules adopted are consistent with what occurred in the collective bargaining process, no conflict arises. Should a civil service commission choose not to change its rules, perhaps because they apply as well to non-represented employees, then the Legislature has indicated its intent that the collectively bargained result should prevail.

*Id.* (citations omitted). The intent of the Act is that the Agreement supersede the Commission's rules.

The Legislature intended the Act to prevail over civil service rules. Pursuant to statute, case law, and PERC decisions, the Commission was bound to abide by the Agreement.

Affirmed.

SCHULTHEIS, C.J., and SWEENEY, J., concur.

Reconsideration denied February 18, 2000.

Review denied at 141 Wn.2d 1013 (2000).