# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JEREMY VAHLE, an individual, | No. 53317-1-II |
| Appellant, | |
| v. | |
| CITY OF LAKEWOOD, a municipal corporation, | UNPUBLISHED OPINION |
| Respondent. | |

CRUSER, J. — Jeremy Vahle appeals the trial court's grant of summary judgment in favor of the City of Lakewood (the City). Vahle argues that summary judgment in favor of the City was improper because the City's promotional procedures violated the City's municipal code, our Supreme Court precedent in *Seattle Police Officers Guild v. City of Seattle*, 151 Wn.2d 823, 92 P.3d 243 (2004), and chapter 41.12 RCW's purpose of providing for promotions on the basis of merit. Vahle also argues that summary judgment was improper because the Civil Service Commission (Commission) incorrectly calculated his examination score by failing to give him sufficient credit for his veteran's preference, and he is entitled to damages because the City breached his employment contract and negligently failed to enforce merit-based promotion. Last, assuming he prevails on the merits of his claims, Vahle contends that he is entitled to fees incurred on appeal.

We hold that summary judgment was proper because the promotional procedures set forth in the City's municipal code were superseded by the collective bargaining agreements entered into by the City and the Lakewood Police Independent Guild (LPIG). We further hold that the City's promotional procedures do not violate *Seattle Police Officers Guild* or chapter 41.12 RCW, and Vahle's breach of contract and negligence claims were properly dismissed. We decline review of whether the Commission incorrectly calculated Vahle's examination score and decline Vahle's request for fees.

Accordingly, we affirm the trial court's grant of summary judgment in favor of the City.

FACTS

A. BACKGROUND FACTS

In 2003, the City formed its own police department. LAKEWOOD MUNICIPAL CODE (LMC) 2.14.010. Pursuant to chapter 41.12 RCW, the City created a civil service system to provide civil service rights to employees. Ch. 2.10 LMC. The City established the Commission to draft and administer the civil service rules pertaining to recruitment, promotion, demotion, and employment for the police department. Former LMC 2.10.020 (2003). The Commission enacted the City of Lakewood Civil Service (CLCS) Rules. CLCS rule 1.1. The Commission adopted former CLCS rule 10.6 (2015), referred to as the "rule of five," to fill vacancies for an entry-level officer, a lateral officer, or an internal promotion.[1] Clerk's Papers (CP) at 469 (capitalization omitted). The

---

[1] The civil service rules have been updated. The previous version of the CLCS rules is located in the record. The current version can be found on the Commission's website. These updates are not germane to our analysis of Vahle's claims.

2

following details the process for administering the rule of five to fill a vacancy for an internal promotion.

The Commission administered a civil service examination to all promotion candidates. CLCS rule 8.1. The Commission used the exam scores to establish a "Register," or a list of qualified candidates certified for the promotion, ranked in numerical order from the highest scoring candidate to the lowest scoring candidate.[2] CP at 449 (former CLCS rule 4.44 (2015)) (capitalization omitted); CLCS rule 4.10. The examination score was calculated based on the points scored on the examination plus an additional percentage for veterans, if applicable. CP at 448 (former CLCS rule 4.28 (2015)).

When the police chief identified an available position, the Secretary-Chief Examiner of the Commission (Secretary) generated a list of the five highest scoring eligible candidates, known as the "certified eligibility list."[3] CP at 469 (former CLCS rule 10.6). If multiple positions were available, the Secretary added an additional three candidates for each available position to the certified eligibility list. *Id.* (former CLCS rule 10.6.1 (2015)). The certified eligibility list was generally effective for one year. CLCS rule 9.8.1. The police chief had discretion to select any of the five highest scoring applicants for the open position, without respect to their relative positions on the list. CP at 468 (former CLCS rule 10.3 (2015)). The City Manager, the appointing authority,

---

[2] "Certify" is defined as "[t]o verify a list of names providing the ranked order of candidates tested and found eligible for employment or promotion." CLCS rule 4.10 (capitalization omitted).

[3] A certified eligibility list is defined as a "list of names certified by the Commission from which the Appointing Authority may fill a vacancy." CLCS rule 4.9.

approved the police chief's selected candidates. CLCS rule 4.5; CP at 468 (former CLCS rule 10.3); CP at 469 (former CLCS rule 10.6)

When the City passed legislation creating the Commission in 2003, the City provided a process for filling vacancies. Former LMC 2.10.090 (2003). The City delegated the power to make and adopt rules and regulations that effectuate the purposes of chapter 41.12 RCW, but limited the Commission's rule making power by providing the following:

> The commission shall have power to make and adopt such rules and regulations as are necessary to effectuate the purposes of this ordinance and Chapter 41.12 RCW; provided, however, that the commission shall have the flexibility to adopt rules different from the express provisions of Chapter 41.12 RCW which effectuate such purposes; and provided further, that such rules shall include a 12-month probationary period and a certification *rule of three eligible persons or 15 percent of the eligible persons*, whichever is greater.

Former LMC 2.10.090 (emphasis added). Thus, the City mandated the rule of three, but the Commission enacted former CLCS rule 10.6, which provided for the rule of five. The Commission has used the rule of five since its inception.

On September 5, 2006, the Lakewood City Council (City Council) approved the initial collective bargaining agreement between the City and the LPIG. Article 4.01 of the initial agreement stated the following:

> Vacancies shall be filled and promotions made in accordance with Lakewood Civil Service Rules.

CP at 535. The City Council approved five successive agreements between the years of 2006 and 2016. Each successive agreement contained the language set forth in Article 4.01.

On October 16, 2017, the City passed Ordinance 674, which amended former LMC 2.10.090. The amendment repealed the City's mandate of the use of the rule of three. The amended ordinance reads as follows:

> The Commission shall have power to make and adopt such rules and regulations as are necessary to effectuate the purposes of this chapter and Chapter 41.12 RCW. The Commission shall also have the power to make rules and regulations governing the Commission in the conduct of its meetings and any other matter over which it has authority.

LMC 2.10.090.

B. OFFICER VAHLE

Vahle has been a police officer for the City since 2004. Before becoming a police officer, Vahle served in the United States Air Force. In 2015, Vahle tested to be on the list for promotion to sergeant. In January 2016, the police department had two openings for promotion to sergeant. The Commission certified a list of eight employees eligible for promotion. Vahle was ranked number two on the list. The police chief, Michael Zaro, did not select Vahle for promotion. In July 2016, the police department experienced one opening for promotion to sergeant. Zaro did not select Vahle for the promotion. In August 2016, the police department experienced two more openings for promotion to sergeant. Vahle was again not selected for promotion. From the certified eligibility list, Vahle, as well as the fourth ranked officer and the eighth ranked officer, were not promoted.

In September of 2016, Vahle filed a report to the Human Resources Director for the City (Director), claiming that he was passed over for promotion due to activity protected by the Local Government Whistleblower Protection Act, chapter 42.41 RCW. Vahle claimed that he was passed over for promotion because he previously reported illegal actions of a former officer and participated in an investigation regarding a race discrimination complaint made by a former officer. The Director conveyed Vahle's report to the City Manager, and the City Manager ordered the Director to investigate Vahle's complaint.

On October 5, 2016, the Director issued a report concluding that Vahle's complaint was unfounded. The investigation revealed that Vahle was not passed over for promotion due to his reporting of a former officer's illegal actions or his participation in the investigation of a race discrimination complaint. The Director found that the command staff "lauded" Vahle's report of illegal activity and were unaware of Vahle's statements made during the investigation into racial discrimination. CP at 204. The Director's investigation also revealed that it was common for a police chief to recommend candidates for promotion out of the order set forth on the certified eligibility list. Vahle did not seek review of the Director's conclusion.[4]

During the investigation, Zaro told the Director that he declined to promote Vahle based on his "lack of judgment and maturity." *Id.* at 32. Zaro cited to Vahle's conduct of pursuing a romantic relationship with a domestic violence victim while involved in the arrest and prosecution of the victim's former boyfriend as evidence of Vahle's lack of judgment. Zaro also cited an incident where Vahle wore pink shoes while on patrol. According to Vahle, several union members sought a boot allowance as a contract demand. In the course of discussing the allowance, a fellow union member told Vahle that he would pay for his lunch if Vahle wore "obnoxious" shoes to work. *Id.* at 106. The union president heard the conversation and warned Vahle that if he did so, he would get in trouble. Vahle disagreed because there was not a policy dictating what shoes

---

[4] Under RCW 42.41.040(4), Vahle had the right to "request a hearing to establish that a retaliatory action occurred and to obtain appropriate relief."

officers should wear.[5] Following this conversation, Vahle reported to work wearing pink shoes. His conduct was reported to Zaro.

On October 21, 2016, Vahle sent a letter to the Secretary requesting a hearing before the Commission. Vahle sought to appeal the Commission's promotional process on the grounds that the rule of five failed to meet the requirements of chapter 41.12 RCW. Vahle stated that the rule allowed Zaro to promote based on favoritism, contrary to the chapter's purpose of providing for promotion based on merit and the Supreme Court's decision in *Seattle Police Officers Guild*. Vahle also claimed that the rule of five violated former LMC 2.10.090, the City's ordinance mandating the rule of three.

In response to the letter, the Secretary notified Vahle that his letter was untimely under CLCS rule 18.2. CLCS rule 18.2 states that a petition for a hearing before the Commission must be filed within 10 days of the appointing authority's action of which the employee objects. The Secretary informed Vahle that the eligibility list was certified on January 7, 2016, and the most recent appointment was effective on August 22, 2016, almost two months before he filed his petition. Because the petition was untimely, the Secretary denied Vahle's request for a hearing.

On August 28, 2017, Vahle requested a hearing before the Commission due to the Commission's announcement that it would use the rule of five when creating a new certified eligibility list. The Secretary denied Vahle's request for a hearing. The Secretary stated that Vahle's request for a hearing was premature because he had not been demoted or terminated, and

---

[5] The record does not contain a department policy specific to footwear. According to Vahle and Zaro, there was not a rule against wearing pink shoes. But everyone "traditionally" wore black shoes. CP at 358.

he did not provide any evidence that he was adversely impacted by the rule of five. The Secretary informed Vahle that the rule of five was lawful, and that the Commission would continue to use the rule. Vahle appealed the Secretary's decision to the Commission. The Commission reviewed his request and closed the matter without further consideration.

On December 7, 2017, the Commission certified an eligibility list for an opening for promotion to sergeant. Vahle was ranked number three on the list. On December 11, 2017, Vahle sent a letter to the Secretary claiming that his overall examination score that he received in the 2017 promotional process had been incorrectly calculated. Vahle asserted that the Secretary had erred in her calculation of his score because she miscalculated his veteran's preference percentage under RCW 41.04.010(3). RCW 41.04.010(3) provides that veterans receive an additional five percent to their examination scores. Vahle claimed that the Secretary did not award him the full five percent because she gave him five percent of his examination score instead of five percent of the overall points possible on the examination.

In response to Vahle's challenge, the Secretary contended that the manner in which she calculated his veteran's preference was correct. The Secretary stated that under RCW 41.04.010, veteran's preference is calculated based on the percentage of a candidate's final examination score and not the overall points possible on the examination. From the certified eligibility list, Zaro selected the number one ranked candidate for the promotion.

C. PROCEDURAL HISTORY

On October 30, 2017, Vahle filed a complaint against the City. Vahle's complaint contained three claims. Under his first claim, Vahle sought declaratory and injunctive relief against the City for its use of the rule of five. Vahle sought a declaration that the rule of five violated

chapter 41.12 RCW and former LMC 2.10.090. Vahle also sought "a declaration that he continue his civil service with [the City] at the higher rank of Sergeant." CP at 17.

Under his second claim, Vahle sought damages under a breach of contract or promissory estoppel theory. Vahle claimed that the Commission and Zaro failed to follow chapter 41.12 RCW and former LMC 2.10.090, which he alleged formed the basis of his employment contract. Vahle asserted that the City failed to uphold its promises to provide impartial opportunities for advancement and preference points due to his status as a veteran. Vahle claimed that he relied on these specific promises to his detriment. In addition to damages, Vahle sought specific performance of the terms of his employment, including promotion to sergeant.

Finally, Vahle sought damages under a negligence claim. Vahle claimed that the City acted negligently when it "failed to follow civil service duties and omitted statutory protections." *Id.* at 23. Vahle claimed that the City's breach was the proximate cause of his harm, including emotional distress, humiliation, loss of wages, and ability to advance in the workplace.

The City moved for summary judgment. The City argued that the rule of five satisfies the statutory purpose of civil service, and the Commission correctly used the rule of five because it was incorporated in the collective bargaining agreements and constituted a binding past practice. The City argued that Vahle's claims for negligence and for breach of contract or promissory estoppel should be dismissed because the terms of his employment as a public employee are controlled by statute, and Vahle did not identify a promise by the City to form the basis of his claim. The City argued that Vahle could not proceed on claims of unlawful retaliation because Vahle did not make a claim for a violation of chapter 49.60 RCW or other antidiscrimination statutes in his complaint; and even if he did, Vahle did not exhaust proper administrative remedies.

Vahle moved for partial summary judgment. Vahle requested a declaratory order stating that the City violated civil service employment standards as a matter of law and prohibiting the City from promoting officers using the rule of five in the future. Vahle claimed that the City's use of the rule of five was unsupported by statute and allowed for promotions based on favoritism in violation of chapter 41.12 RCW.[6] Vahle also asked the court to determine that the City violated civil service laws by miscalculating his veteran's preferences.

The court granted the City's motion for summary judgment and denied Vahle's motion for partial summary judgment. Vahle appeals.

DISCUSSION

I. SUMMARY JUDGMENT

We review a trial court's decision to grant or deny a motion for summary judgment de novo. *Seattle Police Officers Guild*, 151 Wn.2d at 830. Summary judgment is proper if there are "no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Smith v. Bates Tech. Coll.*, 139 Wn.2d 793, 800, 991 P.2d 1135 (2000). We view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Killian v. Seattle Pub. Sch.*, 189 Wn.2d 447, 454, 403 P.3d 58 (2017).

II. VALIDITY OF THE CITY'S PROMOTIONAL PROCEDURES

Vahle argues that the City wrongfully used the rule of five in the past because the rule violated former LMC 2.10.090, which established the use of the rule of three, and the City cannot continue to use the rule of five in the future because the Commission does not have authority to

---

[6] At one point in the argument section of his motion for partial summary judgment, Vahle asked the court to deem Zaro's appointments to sergeant void and unenforceable as a matter of law. Vahle did not seek this remedy in his complaint or at any other time during the litigation.

adopt merit-based standards for promotion. Vahle also argues that the City's promotional procedures violate *Seattle Police Officers Guild* and chapter 41.12 RCW's purpose of providing for promotions on the basis of merit because the procedures allow for the police chief to select from over 25 percent of eligible candidates.

The City argues that it did not wrongfully use the rule of five in the past because the collective bargaining agreements, which allowed for the rule of five, superseded former LMC 2.10.090. The City argues that use of the rule of five in the future is proper because the Commission has authority to enact merit-based standards, and the rule of five satisfies our Supreme Court precedent and statutory purposes of civil service. We agree with the City.

A. LEGAL PRINCIPLES

"Since the 1930s, [our legislature] has required municipalities to provide civil service rights for employees of the police and fire departments." *Seattle Police Officers Guild v. City of Seattle*, 113 Wn. App. 431, 434, 53 P.3d 1036 (2002), *aff'd*, 151 Wn.2d 823 (2004) (citing *City of Yakima v. Int'l Ass'n of Fire Fighters, Local 469*, 117 Wn.2d 655, 664-65, 818 P.2d 1076 (1991)). "The fundamental purpose of civil service laws is to require public officials to hire, promote and discharge employees based on merit rather than political affiliation, religion, favoritism or race." *City of Yakima*, 117 Wn.2d at 664. In other words, "the civil service system was designed to replace the spoils system with a merit system." *Id.*

Washington courts have determined that chapter 41.12 RCW, the civil service statute specific to police departments, was enacted in order to

> (1) provide for *promotion on the basis of merit,* (2) give police officers tenure, and (3) provide for a civil service commission to administer the system and to investigate, by public hearing, removals, suspensions, demotions, and discharges by the appointing power to determine whether such action was or was not made for

11

political or religious reasons and whether it was or was not made in good faith for cause.

*Seattle Police Officers Guild*, 151 Wn.2d at 831 (alteration in original) (quoting *Reynolds v. Kirkland Police Comm'n*, 62 Wn.2d 720, 725, 384 P.2d 819 (1963)).

Chapter 41.12 RCW serves as model civil service system that cities may follow to fill the requirement of providing a civil service system. *Seattle Police Officers Guild*, 113 Wn. App. at 434. Cities run the spectrum from adopting all the procedures and policies set forth in chapter 41.12 RCW or forgoing the model entirely by enacting a system unique to the city pursuant to RCW 41.12.010. *Id.* RCW 41.12.010 states, in relevant part: "The provisions of this chapter shall have no application to cities and towns which at the present time have provided for civil service in the police department . . . by local charter or other regulations which . . . *substantially accomplish* the purpose of this chapter." (Emphasis added.) However, if any city repeals the local charter or local acts providing for civil service, the model system applies. RCW 41.12.020.

To properly administer the civil service system, RCW 41.12.030 provides for the appointment of a civil service commission. A commission has the power and authority to promulgate and adopt comprehensive rules and regulations regarding the general subject matter of personnel administration, such as the manner in which examinations are held and appointments and promotions are made. RCW 41.12.040(1). A commission's rules and regulations must "substantially accomplish the purpose of" chapter 41.12 RCW. RCW 41.12.010; *Reynolds*, 62 Wn.2d at 727.

With regard to promotional procedures in cities that have not adopted their own civil service commissions, chapter 41.12 RCW applies the rule of one. RCW 41.12.100 provides that when a service position becomes vacant, the commission must certify the name of the candidate

12

highest on the eligibility list who is willing to accept the appointment, and the appointing power must select that candidate for the position. After the appointment or employment decision, RCW 41.12.100 provides for a probationary period before the employment or promotion is deemed complete to "enable the appointing power to exercise a choice in the filling of positions." During that period, the appointing power may deem the candidate unfit or unsatisfactory for the service position and select the next highest candidate on the eligibility list for the position. *Id.*

Here, as noted above, the City enacted legislation creating its own civil service system pursuant to chapter 41.12 RCW. LMC 2.10.020. Although the specific provisions and procedures set forth in chapter 41.12 RCW do not apply to the City, the City's civil service rules must "substantially accomplish the purpose of" the chapter by eliminating the practice of favoritism by its civil service employees and requiring public officials to promote employees based on merit. RCW 41.12.010; *City of Yakima*, 117 Wn.2d at 664.

Vahle makes numerous arguments on appeal regarding the City's promotional procedures, some of which are unclear. Vahle appears to claim that (1) the City violated civil service laws by using the rule of five in the *past* because the Commission did not have authority to adopt the rule in light of former LMC 2.10.090's mandate to use the rule of three; and (2) the City should be prohibited from using the rule of five in the *future* because the rule allows for the police chief to select from over 25 percent of eligible candidates, which he alleges violates our Supreme Court's decision in *Seattle Police Officers Guild*, and does not ensure merit-based promotion.

B. CONFLICT WITH FORMER LMC 2.10.090 (RULE OF THREE)

Vahle argues the City wrongfully used the rule of five because the rule violated former LMC 2.10.090, which provided for the rule of three. He argues that the Commission did not have

authority to use the rule of five in the past because civil service rules cannot override local ordinances; and, as such, former LMC 2.10.090 controlled as a matter of law. Vahle argues that Lakewood City Ordinance 674 (Ordinance 674), the amendment that repealed the rule of three mandate, did not cure the conflict because the City may not delegate enactment of a merit selection standard to the Commission or defer to the Commission's standard.

The City contends that its use of the rule of five was not wrongful, in spite of former LMC 2.10.090, because the City approved six collective bargaining agreements that adhered to the Commission's rule of five, and the collective bargaining agreements superseded the former LMC 2.10.090. Last, the City argues that Ordinance 674 cured the conflict because the Commission has authority to establish a civil service system pursuant to chapter 41.12 RCW. We agree with the City.

*1. THE COLLECTIVE BARGAINING AGREEMENTS SUPERSEDED FORMER LMC 2.10.09*

Vahle argues that the Commission did not have authority to adopt and use the rule of five because the civil service rules cannot override former LMC 2.10.090. The City argues that the City's approval of the collective bargaining agreements with the LPIG superseded former LMC 2.10.090. We agree with the City.

The City approved six collective bargaining agreements between 2006 and 2016. All the agreements included the following provision:

> Vacancies shall be filled and promotions made in accordance with Lakewood Civil Service Rules.

CP at 535.

The City contends that under chapter 41.56 RCW, the Public Employees' Collective Bargaining Act (the Act), when a collective bargaining agreement conflicts with an ordinance, the

14

collective bargaining agreement prevails. Under the Act, "if any provision of this chapter conflicts with any other statute, ordinance, rule or regulation of any public employer, the provisions of this chapter shall control." RCW 41.56.905. Vahle asserts that the City's reliance on RCW 41.56.905 is misplaced because the number of names placed on a certification list for promotion is not a mandatory subject of collective bargaining, and the City has not identified a provision of the Act that conflicted with former LMC 2.10.090.

We addressed the application of RCW 41.56.905 in *City of Spokane v. Spokane Civil Service Commission*, 98 Wn. App. 574, 583, 989 P.2d 1245 (1999). In that case, the City of Spokane (Spokane) and the Spokane Police Guild (Guild) entered into a collective bargaining agreement that changed the process of promoting a patrolman to a sergeant. *Id.* at 576. The commission refused to abide by the agreement, claiming that the civil service rules and not the agreement governed the promotional process. *Id.* at 583. Spokane and the Guild brought an action for a declaratory judgment to determine whether the collective bargaining agreement superseded the commission's rules. *Id.* at 577-78.

The court held that under RCW 41.56.905, the collective bargaining agreement superseded the commission's rules. *Id.* at 583-84. The court reasoned that under the Act, Spokane was required to collectively bargain with the Guild on promotional procedures because promotional procedures are considered a mandatory subject of bargaining. *Id.* at 583. Spokane upheld its duty to bargain but could not comply with the bargained-for terms without the commission's cooperation. *Id.* at 584. Thus, the court found a conflict between (1) the commission's rules and (2) Spokane's obligation to abide by the agreement under the Act. *Id.* The court reasoned that "[t]he intent of the Act requires the Commission's actions here to be prohibited." *Id.*

In coming to its conclusion, the court in *City of Spokane* relied on a decision by the Public Employment Relations Commission (PERC), *International Ass'n of Fire Fighters, Local No. 1604 v. City of Bellevue*, No. 7143-U-87-1458, 1990 WL 693212, (Wash. Pub. Emp't Relations Comm'n Jan. 30, 1990). *Id.* at 583-84. In that case, employees filed an unfair labor practice action when the commission unilaterally changed its civil service rules so that the rules conflicted with mandatory subjects of the collective bargaining agreement. *City of Bellevue*, 1990 WL 693212 at *1-2. The City of Bellevue (Bellevue) argued that it had no authority over when the commission implemented its rules, and that the commission's actions were authorized by statute. *Id.* at *4, 6. PERC found a conflict between (1) the commission's authority to adopt new rules and (2) Bellevue's obligation to bargain over mandatory subjects under the Act. *Id.* at *6. Because the commission's adoption of new rules allowed Bellevue to evade its bargaining obligation under the Act, the Act superseded the rules and the agreement prevailed. *Id.*

Here, like *City of Spokane*, at issue are the procedures used for promotion to sergeant. 98 Wn. App. at 576. Former LMC 2.10.090 mandated the police department to use the rule of three for promotion, while the civil service rules, which were incorporated by reference in the collective bargaining agreements, mandated the use of the rule of five for promotion. According to *City of Spokane*, procedures used to promote within the department are considered mandatory subjects of bargaining. 98 Wn. App. at 583. In addition, PERC has also concluded that promotions within a bargaining unit are mandatory subjects of bargaining. *See, e.g.*, *Int'l Ass'n of Fire Fighters, Local 1537 v. City of Anacortes*, No. 12038-U-95-2829, 1996 WL 586494, at *5 (Wash. Pub. Emp't Relations Comm'n Sept. 13, 1996); *Teamsters, Local 117 v. City of Tacoma*, No. 19762-U-05-5010, at 5-6 (Wash. Pub. Emp't Relations Comm'n Apr. 19, 2006). Here, the collective bargaining

agreements state that the sergeant position is a position within the bargaining unit. Therefore, the City's promotional procedures for sergeant constitute a mandatory bargaining subject.

Pursuant to the Act, the City, as the public employer, is required to collectively bargain with employees over promotional procedures as mandatory subjects of bargaining and abide by the procedures as bargained-for terms of the agreement. RCW 41.56.140(4); *City of Spokane*, 98 Wn. App. at 583-84; *City of Bellevue*, 1990 WL 693212 at *6. But the City's obligations to collectively bargain over promotional procedures and to abide by the bargained-for procedures conflicted with former LMC 2.10.090. By incorporating the civil service rules, the collective bargaining agreements mandated compliance with the rule of five while former LMC 2.10.090 mandated the rule of three. Had the City used the rule of three to comply with former LMC 2.10.090 instead of the civil service rule of five, the City would have violated the terms of the agreements and evaded its bargaining obligations under the Act. *City of Bellevue*, 1990 WL 693212 at * at 6.

Under RCW 41.56.905, the provisions of the Act prevail if the provisions conflict with any other statute, ordinance, rule, or regulation of any public employer. Here, the City's obligation to bargain over mandatory subjects and abide by the terms of the collective bargaining agreements superseded compliance with former LMC 2.10.090. *City of Spokane*, 98 Wn. App. at 584-85. Thus, we conclude that pursuant to RCW 41.56.905, the collective bargaining agreements superseded former LMC 2.10.090. Accordingly, we hold that the trial court properly granted summary judgment dismissal on this issue.

*2. THE COMMISSION HAD AUTHORITY TO ADOPT A MERIT SELECTION STANDARD*

In 2017, the City adopted Ordinance 674, which repealed former LMC 2.10.090's mandate to use the rule of three. Vahle argues that Ordinance 674 did not cure the conflict between former LMC 2.10.090 and the civil service rule mandating the rule of five because the City cannot delegate enactment of a merit selection standard to the Commission or defer to the Commission's standard. The City argues that Vahle's argument lacks merit because chapter 41.12 RCW allocates broad responsibilities to the Commission for establishing a civil service system. We agree with the City.

RCW 41.12.170 requires cities to "adopt[ ] legislation implementing state law requiring civil service." *Higgins v. Salewsky*, 17 Wn. App. 207, 212, 562 P.2d 655 (1977). RCW 41.12.170 reads:

> The various cities affected by the provisions of this chapter, shall immediately upon the taking effect thereof, enact appropriate legislation for carrying this chapter into effect, and the failure upon the part of the duly constituted authorities of any such city so to do shall be considered a violation of this chapter and be punishable as such.

The state enactment requiring civil services includes the obligation to establish civil service commissions that have the power to carry out the provisions of the statute. RCW 41.12.030; *Reynolds*, 62 Wn.2d at 730. Under RCW 41.12.185, a civil service commission has the duty "to make suitable rules and regulations not inconsistent with the purpose of this chapter, for the purpose of carrying the provisions thereof into effect." RCW 41.12.040(1) further explains that the Commission has the authority and duty to make suitable rules and regulations that

> provide in detail the manner in which examinations may be held, and appointments, promotions, transfers, reinstatements, demotions, suspensions, and discharges shall be made, and may also provide for any other matters connected with the general subject of personnel administration, and which may be considered desirable to further carry out the general purposes of this chapter, or which may be found to be in the interest of good personnel administration.

18

The term "'appointment'" consists of "all means of selection, appointing or employing any person to hold any office, place, position or employment subject to civil service." RCW 41.12.220.

Here, the City implemented legislation establishing the Commission and providing the Commission with the power to carry out the provisions of chapter 41.12 RCW by enacting chapter 2.10 LMC, including former LMC 2.10.090. Although the City initially limited the Commission's rulemaking authority on the subject of merit selection standards under former LMC 2.10.090 by mandating the rule of three, Ordinance 674 repealed the language limiting the Commission's rulemaking authority. Thus, Ordinance 674 cured the conflict by deferring to the Commission's civil service rules.

Vahle contends that even without Ordinance 674, RCW 41.12.185 and RCW 41.12.040 do not give the Commission authority to set a merit selection standard. However, Vahle fails to show how these statutes limit the Commission's rulemaking authority. Nothing in chapter 41.12 RCW requires cities to determine the merit selection standard or prohibits cities from deferring to a commission's standard. On the contrary, RCW 41.12.030 requires cities to establish a commission with the power to make suitable rules and regulations. Furthermore, RCW 41.12.040(1) specifically states that a commission has the authority to make rules that "provide in detail the manner in which" promotions shall be made. Therefore, the City did not improperly defer to the Commission to select a merit selection standard that complies with chapter 41.12 RCW.

Accordingly, we hold that under RCW 41.12.185 and RCW 41.12.040(1), the Commission may select a merit selection standard.

C. WHETHER THE CITY'S PROMOTIONAL PROCEDURES ENSURE MERIT-BASED PROMOTION

Vahle argues that the City's promotional procedures fail to accomplish chapter 41.12 RCW's purpose of providing for promotions on the basis of merit because the procedures allow the police chief to choose from more than 25 percent of candidates, which does not substantially accomplish merit-based promotion under *Seattle Police Officers Guild*. The City argues that Vahle's argument lacks merit because it is unsupported by the record and our Supreme Court has ruled that the rule of five satisfies the statutory purpose of civil service in *Seattle Police Officers Guild*, 151 Wn.2d at 837. We agree with the City.

Our Supreme Court has issued several decisions concerning promotional standards that satisfy merit-based promotion under chapter 41.12 RCW. In *Local 404, International Ass'n of Fire Fighters v. City of Walla Walla*, a firefighter's union brought an action against the city of Walla Walla (Walla Walla), asserting that Walla Walla's system of promotion was contrary to the purposes of civil service. 90 Wn.2d 828, 830, 586 P.2d 479 (1978). Walla Walla's policy governing promotions was based on the rule of three. *Id.* The union argued that the rule of one, the policy adopted in the model civil service system, was the only system of promotion that substantially accomplished the purpose of chapter 41.08 RCW[7] because it removed all discretion from the appointing authority. *Id.* at 831.

The court disagreed. *Id.* The court reasoned that although the legislature adopted the rule of one in its model statutory system, the legislature did not mandate strict compliance with its civil service system statutes. *Id.* at 831-32. Rather, the legislature adopted "a flexible approach by

---

[7] Chapter 41.08 RCW is the nearly identical state law governing civil service systems for firefighters. In this context, decisions under chapter 41.08 RCW and chapter 41.12 RCW constitute authority for both. *Seattle Police Officers Guild*, 113 Wn. App. at 438 n.3.

exempting cities which subsequently adopt systems 'substantially' accomplishing the purpose of the chapter." *Id.* The court stated that the rule of three

> "is a well-established and well-recognized method of carrying out and accomplishing the purposes of civil service. . . . The statute intended to allow cities and towns a local option as to methods and techniques and as to the many recognized and acceptable methods of setting up a civil service system to substantially accomplish the purpose of civil service."

*Id.* at 832 (quoting *Bellingham Firefighters, Local 106 v. City of Bellingham*, 15 Wn. App. 662, 666, 551 P.2d 142 (1976)). The court also reasoned that the legislature did not intend to eliminate discretion from the process because following an appointment, the legislature provided for a probationary period to "'enable the appointing power to exercise a choice in the filling of positions.'" *Id. at* 831 (quoting RCW 41.08.100).

The principles set forth in *Local 404* were applied in 2002 when several police officers, who were bypassed for multiple promotions, brought suit against the city of Seattle (Seattle) for its system of promotion. *Seattle Police Officers Guild*, 113 Wn. App. at 436-40. The commission's certified list contained either the names of the top 25 percent of eligible candidates or the top five eligible candidates, whichever number was larger. *Id.* at 435. The officers argued that the system of promotion failed to substantially accomplish chapter 41.12 RCW's purpose of providing promotion based on merit because it provided the police chief with too much discretion. *Id.* at 433, 436.

The court held that the rule of five substantially accomplished chapter 41.12 RCW's purpose of ensuring officers received promotions based on merit, but that the rule of 25 percent failed to substantially accomplish the same purpose. *Id.* at 439. The court severed the rule of 25 percent from the ordinance. *Id.* at 440.

The officers petitioned for review of the court's decision on the rule of five. *Seattle Police Officers Guild*, 151 Wn.2d at 826. Our Supreme Court affirmed the holding that the rule of five substantially accomplished chapter 41.12 RCW's purpose. *Id.* at 836-37. The court reasoned that on its face, the rule of five ensured merit because it granted employees the right to openly compete for positions and ensured that only the officers that qualified for the positions based on their performance on the examinations were appointed. *Id.* at 834. The court also stated that even if Seattle awarded promotions on any basis other than merit in practice, "it is difficult to argue that this practice would not occur under the already permissible 'rule of three.'" *Id.* at 835.

The court's decision also partially relied on legislative guidance, which at the time permitted the rule of six under the state employees' civil service statute. Former RCW 41.06.150(2) (1999); *Seattle Police Officers Guild*, 151 Wn.2d at 835-37. The court found this persuasive because if the legislature determined that the rule of six accomplished the purpose of promoting employees based on merit, the rule of five must accomplish that same purpose. *Seattle Police Officers Guild*, 151 Wn.2d at 836.

Vahle claims that the City's procedures do not substantially accomplish merit-based promotion because the procedures allow the police chief to choose from over 25 percent of eligible candidates, which would not comply with *Seattle Police Officers Guild*.[8] However, Vahle

---

[8] Vahle also misinterprets the holding in *Seattle Police Officers Guild* by stating that our Supreme Court invalidated the rule of 25 percent. Our Supreme Court did not review whether the rule of 25 percent substantially accomplished chapter 41.12 RCW's purpose of providing for promotion based on merit because that issue was not raised on review. *Seattle Police Officers Guild*, 151 Wn.2d at 830 n.6, 837-38. The petitioners challenged only the court's decision upholding the rule of five and its decision to sever the language pertaining to the rule of 25 percent from the ordinance. *Id.* at 834, 837.

misconstrues the court's analysis in *Seattle Police Officers Guild* by conflating the rule of five and the rule of 25 percent. As the City correctly acknowledges, there is no correlation between the rule of five and the rule of 25 percent. Rather, the court considered the amount of discretion that each distinct rule gave the appointing power when selecting a candidate from a certified eligibility list. *Seattle Police Officers Guild*, 113 Wn. App. at 439-40. The court invalidated certification of the top 25 percent because Seattle did not provide any authority or reference to another municipality that used a percent rule which allowed a noticeable increase of discretion. *Id.* at 439.

Here, the City's civil service rules do not contain a promotional procedure that allows the police chief to select from a percentage of candidates, a procedure that was invalidated in *Seattle Police Officers Guild* because it does not substantially accomplish merit-based selection. *Id.* Instead, the City certifies the top five police officers for consideration for promotions, a practice that substantially meets the purpose of promoting employees based on merit. *See Seattle Police Officers Guild*, 151 Wn.2d at 836.

Additionally, like *Seattle Police Officers Guild*, our decision is not made without legislative guidance. 151 Wn.2d at 837. In 2002, the legislature amended former RCW 41.06.150(2) to omit the benchmark rule of six, providing rulemaking authorities with even greater flexibility to enact rules governing the number of names to certify. *See* LAWS OF 2002, ch. 354, §§ 203, 411. The legislature's delegation of discretion provides further support that the City's promotional procedures are sufficient to satisfy promotion based on merit.

Furthermore, our legislature recently amended RCW 41.14.130, the civil service statute establishing a merit system of employment for county sheriff's offices, to permit the appointing authority with the power to select from the names of "five persons highest on the eligib[ility] list"

to fill vacant positions. LAWS OF 2020, ch. 14, § 2. Therefore, the City's procedures fit squarely within the number the legislature has determine accomplish promotion based on merit.

Because we conclude that the City's procedures are valid, we hold that the trial court properly granted summary judgment dismissal on this issue.

III. DAMAGES

Vahle asserts that "having erroneously used [the] Rule of Five to bypass his selection, and where Chief Zaro actually bypassed him for impermissible reasons, Officer Vahle should be afforded a damages remedy against [the City] under his breach of contract, promissory estoppel, and negligence theories." Br. of Appellant at 15-16. The City disagrees, contending that he cannot bring these claims under Washington law in the context of a civil service dispute. We agree with the City.

A. BREACH OF CONTRACT OR PROMISSORY ESTOPPEL

Vahle first seeks damages under his breach of contract or promissory estoppel claim. Vahle argues that the City breached his employment contract when it broke its promise to make promotions based on merit using the rule of three.[9] Vahle states that he relied on the City's promise,

---

[9] On summary judgment and on appeal, Vahle argued that he was entitled to a declaratory judgment stating that the City violated RCW 41.04.010 by miscalculating his veteran's preference percentage. RCW 41.04.010 provides that veterans receive an additional percentage on their examination score. However, Vahle never asked for declaratory relief on this issue in his complaint. Rather, he brought this issue under his breach of contract or promissory estoppel claim, stating that the City breached its contract by failing to uphold its promise to provide preference points due to his status as a veteran. Vahle does not address whether this court may provide declaratory relief when he brought this issue under a breach of contract or promissory estoppel claim. Because this issue was pleaded as a breach of contract or promissory estoppel claim, we address it as such on appeal. However, because we conclude that the terms and conditions of public employment do not give rise to contractual rights, Vahle's claim fails.

24

and the City's disregard of its promise caused him harm because Zaro bypassed him for promotions based on improper reasons. The City argues that his claim lacks merit because Washington law does not recognize breach of contract or promissory estoppel claims in the context of a civil service dispute. The City argues that even if this court finds that Vahle can bring the claims, both claims fail and should not be reinstated. We agree with the City.

Washington courts have consistently held that the terms and conditions of public employment do not give rise to contractual rights. *Wash. Fed'n of State Emps. v. State*, 101 Wn.2d 536, 541-42, 682 P.2d 869 (1984); *Weber v. Dep't of Corr.*, 78 Wn. App. 607, 610-11, 898 P.2d 345 (1995); *Greig v. Metzler*, 33 Wn. App. 223, 230, 653 P.2d 1346 (1982). Rather, civil service employment is grounded on a "statutorily-controlled employment relationship." *Riccobono v. Pierce County*, 92 Wn. App. 254, 263, 966 P.2d 327 (1998). The employment relationship is the legal equivalent to "a contract of employment formed between the public employer and employee" that "incorporates, as implied and controlling terms, the civil service statutes as now existing or hereafter amended, subject to Washington Constitution Article 1, Section 23." *Id.* at 263 n.25.

The legislature intended that a civil service employee utilize remedies set forth in civil service statutes and regulations before gaining access to the superior court for additional remedies. *Id.* at 263-64; *Reninger v. Dep't of Corr.*, 79 Wn. App. 623, 632, 901 P.2d 325 (1995). Therefore, "a claimant suing for breach of an employment relationship controlled by the civil service statutes and regulations must exhaust the procedures and remedies set forth therein." *Riccobono*, 92 Wn. App. at 264.

However, this court has recognized an exception for exhaustion of civil service remedies for actions of wrongful discharge pertaining to discrimination or retaliation. *Id.*; *Wilson v. City of*

*Monroe*, 88 Wn. App. 113, 124, 943 P.2d 1134 (1997). In Washington, a claim of discrimination or retaliation is a statutory claim based on chapter 49.60 RCW. *Riccobono*, 92 Wn. App. at 265; *Yakima County v. Yakima County Law Enf't Officers Guild*, 157 Wn. App. 304, 328, 237 P.3d 316 (2010). Individual employees are permitted to vindicate their civil rights under chapter 49.60 RCW in court without first exhausting remedies provided by civil service rules or collective bargaining agreements. *Riccobono*, 92 Wn. App. at 264-65; *Yakima County*, 157 Wn. App. at 328.

Vahle's breach of contract or promissory estoppel theory is premised on the City's use of the rule of five instead of the rule of three, which he alleges allowed Zaro to select candidates based on favoritism and bypass Vahle for improper reasons. Vahle argues that he properly brought a breach of contract claim because "[a]n employee who has suffered whistleblower retaliation has a choice of remedies." Br. of Appellant at 42.

Vahle relies on *Seattle Police Officers Guild*, discussed *supra*, when arguing that his breach of contract or promissory estoppel claim can survive summary judgment. In that case, the officers argued that even if the rule of five was permissible, the police chief unlawfully failed to promote them. *Seattle Police Officers Guild*, 151 Wn.2d at 839. The court held that the officers' claims would not withstand summary judgment "absent a claim of discrimination or similar unlawful hiring practices." *Id.* The court reasoned that dismissal of the officers' claim was proper because the police chief "'could *always* lawfully select one of the other candidates on the list.'" *Id.* (alteration in original) (quoting *Seattle Police Officers Guild*, 113 Wn. App. at 440).

Here, in contrast to the officer in *Seattle Police Officers Guild*, Vahle claims that he was improperly bypassed due to retaliation in addition to the City's unlawful use of the rule of five. An employee who suffered whistleblower retaliation may bring suit in superior court instead of

exhausting all civil service remedies. *Riccobono*, 92 Wn. App. 264-65. Here, however, Vahle is attempting to bring a claim for breach of contract or promissory estoppel. Therefore, Vahle's cause of action is rooted in rights he claims he possesses under contract, not the statutory right to be free from discrimination or retaliation. *Id.*

As this court has recognized, "[t]he contractual and statutory rights are distinctly separate in nature." *Yakima County*, 157 Wn. App. at 331. The holdings in *Washington Federation of State Employees*, *Weber*, and *Greig* clearly state that the terms and conditions of public employment do not give rise to contractual rights of any form. *Washington Federation of State Employees* held that civil service employment is controlled by legislative policy through the civil service statutes, subject to Washington Constitution Article 1, Section 23. 101 Wn.2d at 539, 541-42. In *Weber*, we concluded that a state employee covered by civil service law may not bring an action for breach of contract against the state arising out of employment. 78 Wn. App. at 611.

Even if we concluded that Vahle's claim could lawfully proceed, Vahle does not identify a clear and definite promise or a contract with a provision stating that he would be promoted based on the rule of three. Vahle argues that he "relied upon the Rule of Three with the expectation of promotion if he ranked within the top three by foregoing work for other departments." Br. of Appellant at 45. However, even if the terms of his public employment gave rise to contractual rights, the terms guaranteed only that Vahle would be placed on the eligibility list for promotions if his exam score was within the highest scores. The City never promised Vahle that he would be promoted because his name was on the certified eligibility list. And even if the Commission violated local code by using the rule of five instead of the rule of three and the violation led to a breach of contract, enforcement of the rule of three does not guarantee that Vahle would receive a

27

promotion. As the court acknowledged in *Seattle Police Officers Guild*, an officer who ranked in the top five would have joined at least four other qualified officers for a promotion, more when multiple positions were available. 113 Wn. App. at 440. Here, Vahle would have joined at least two others on the list for each appointment, more where multiple positions were available. The appointing authority "could always lawfully select one of the other candidates on the list." *Id.*

Therefore, we hold that Vahle's claim fails because terms and conditions of public employment do not give rise to contractual rights, and Vahle does not identify a promise that he would receive a promotion or point to a contract with a provision stating he was entitled to a promotion.

B. NEGLIGENCE

Vahle next seeks damages pursuant to a negligence claim. Vahle argues that the City was negligent for (1) failing to enforce promotion based on merit and (2) failing to supervise the Commission and Zaro which allowed Zaro to retaliate against Vahle by passing Vahle over for promotions for improper reasons. The City argues that Vahle's claim lacks merit because Washington law does not recognize negligence claims that are premised upon alleged violations of the civil service process, and Vahle's claims are taken out of the context in which courts view negligent supervision claims. We agree with the City.

Vahle argues that the City's failure to promote in conformance with merit selection standards is actionable under a negligence claim. In support of his assertion, he relies on *Kirby v. City of Tacoma*, 124 Wn. App. 454, 98 P.3d 827 (2004). Kirby, a police officer, sued the city of Tacoma (Tacoma) for discrimination for his participation in union protected activities, his disability, and his age. *Kirby*, 124 Wn. App. at 462. Kirby also claimed intentional infliction of

emotional distress. *Id.* Kirby was not selected for promotions twice even though he placed first on the civil service list at the time of the appointments for the promotions. *Id.* The court affirmed the summary dismissal of all his claims, holding that Kirby did not properly plead his claim for discrimination for participation in union protected activities, and Kirby did not establish age discrimination, disability discrimination, or intentional infliction of emotional distress. *Id.* at 465-66, 469, 472, 474.

Vahle states that his negligence claim should be actionable "[b]ased upon the same rationale" as *Kirby*. Br. of Appellant at 47. According to Vahle, the City's "failure to promote in conformance with merit selection standards should similarly be actionable in negligence where the adverse action is sufficient[ly] severe like the failure to promote a civil servant using merit standards." Br. of Appellant at 47. But again, Vahle did not bring a claim for discrimination or retaliation like the police officer in *Kirby*. 124 Wn. App. at 462. Instead, Vahle attempts to bring his claim under a negligence theory without exhausting administrative remedies. As we stated above, the legislature intended that a civil service employee utilize remedies set forth in civil service statutes and regulations before gaining access to the superior court for additional remedies. *Riccobono*, 92 Wn. App. at 264.

Additionally, even assuming that Vahle could bring his claim, Vahle does not apply or refer to any elements necessary to establish a claim of negligence. In an action for negligence, a plaintiff must prove four elements: "(1) the existence of a legal duty, (2) breach of that duty, (3) an injury resulting from the breach, and (4) proximate cause." *Little v. Countrywood Homes, Inc.*, 132 Wn. App. 777, 780, 133 P.3d 944 (2006).

Negligent supervision is one type of negligence that creates a duty "to control an employee for the protection of third parties." *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 51, 929 P.2d 420 (1997). However, when an employee's alleged negligent act occurred within the scope of employment, vicarious liability, a different theory of liability, applies. *Anderson v. Soap Lake Sch. Dist.*, 191 Wn.2d 343, 361, 423 P.3d 197 (2018). Thus, a claim for negligent supervision is improper when the actions occurred within the scope of employment. *Id.*

As the City points out, Vahle does not explain how his negligence claim fits within the context of a general negligent supervision theory, nor does he mention vicarious liability. Moreover, Vahle cannot establish that any failure by the City to enforce the rule of three or to adequately supervise the Commission or Zaro caused his alleged injury. *Little*, 132 Wn. App. at 780. Vahle was required to present sufficient proof to allow a reasonable person to conclude that his harm, more probably than not, would not have occurred but for any act or omission of the City. *Id.* However, a proximate cause analysis leads Vahle to the same pitfall that prevents his breach of contract or promissory estoppel claim. Even if the City breached its duty to enforce the rule of three or adequately supervise the Commission or Zaro, Vahle cannot show that but for any breach, he would have been promoted. Vahle would have always been one of at least three qualified candidates eligible for the promotion, and Zaro could have always lawfully selected another candidate on the list. *Seattle Police Officers Guild*, 151 Wn.2d at 839.

We hold that the trial court properly dismissed Vahle's negligence claim because he has not exhausted administrative remedies, and Vahle does not establish the elements necessary to establish a claim of negligence to survive summary judgment.

IV. ATTORNEY FEES

Vahle contends that if we reverse the trial court's order on summary judgment and reinstate his claims for damages, he is entitled to attorney fees incurred on appeal if he prevails on his claims.

In an action resulting in a successful recovery of a judgment for wages or salary owed, attorney fees may be assessed against the employer. RCW 49.48.030; *Corey v. Pierce County*, 154 Wn. App. 752, 773, 225 P.3d 367 (2010). Here, we hold that the trial court properly dismissed Vahle's claims. Therefore, he is not entitled to fees under RCW 49.48.030 because he has not successfully recovered wages or salary owed.

CONCLUSION

We hold that the Commission did not wrongfully use the rule of five because the collective bargaining agreements superseded the City's municipal code. We also hold that the City's promotional procedures do not violate *Seattle Police Officers Guild* or chapter 41.12 RCW's purpose of providing for promotions on the basis of merit. We hold that Vahle's breach of contract

or promissory estoppel claim and his negligence claim were properly dismissed. Last, we deny Vahle's request for fees.

Accordingly, we affirm the trial court's grant of summary judgment in favor of the City.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

LEE, C.J.

GLASGOW, J.